**BLACK HILLS ALLIANCE, Plaintiff,**

v.

**UNITED STATES FOREST SERVICE; and Raymond Housley, Acting Chief, U.S. Forest Service, Defendants.**

Civ. No. 80–5068.

United States District Court, D. South Dakota, W.D.

Dec. 28, 1984.

counsel, the case is submitted and can properly be resolved by the court on the basis of countermotions for summary judgment. For the reasons following, the court concludes that the Forest Service has failed to sustain its burden of proving that the requested information falls within exemptions four or nine. Plaintiff's motion for summary judgment is granted and defendants' motion is denied. Judgment will be entered accordingly.

I

On April 16, 1980, plaintiff, a non-profit, public interest environmental organization, requested disclosure by the Forest Service of a copy of the 1980 Environmental Assessment Report of the Union Carbide proposed uranium exploration drilling program in the Black Hills National Forest. The Forest Service furnished plaintiff a copy of the report but deleted, at the request of Union Carbide, information respecting the precise number, locations and depths of the proposed uranium exploration drill holes. Having exhausted its administrative remedies, plaintiff now sues in this court to compel the Forest Service to disclose the deleted information.

Phyllis R. Girouard, Broken Plow Law Offices, Chadron, Neb., for plaintiff.

Ted McBride, Asst. U.S. Atty., Rapid City, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiff Black Hills Alliance seeks pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), certain uranium exploration drill hole information submitted by Union Carbide Corporation to the United States Forest Service. The Forest Service refuses to disclose this information, contending that it is exempt from disclosure under exemptions four and nine of the FOIA, 5 U.S.C. § 552(b)(4), (b)(9). This court exercises subject matter jurisdiction under § 552(a)(4)(B). By agreement of

II

The FOIA, 5 U.S.C. § 552 (1982), "requires federal agencies to disclose records that do not fall into one of nine exempt categories." *United States v. Weber Aircraft Corporation,* —— U.S. ——, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984) (footnotes omitted). These nine exemptions "must be narrowly construed." *Department of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *see State of North Dakota v. Andrus,* 581 F.2d 177, 179 (8th Cir.1978) (FOIA policy in favor of disclosure mandates that the exemptions be construed narrowly). Once suit is filed challenging agency action in withholding particular information, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). Moreover, an agency invoking a claim of exemption from disclosure must provide

specific justifications in support of its claim; conclusory allegations are insufficient. *Vaughn v. Rosen,* 484 F.2d 820, 826–27 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The only issues before this court are whether the Forest Service has sustained its burden of proving that the withheld drill hole information is confidential within the meaning of exemption four, 5 U.S.C. § 552(b)(4), or geological or geophysical information and data within the meaning of exemption nine, 5 U.S.C. § 552(b)(9).

### III

■ Exemption four applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Forest Service does not contend that trade secrets are involved or that the information is privileged. Consequently, in order that exemption four apply, the information must be (1) commercial or financial, (2) obtained from a person outside the government, and (3) confidential. *National Parks and Conservation Association v. Morton,* 498 F.2d 765, 766 (D.C.Cir.1974) (*National Parks I*). All three elements must be satisfied. *See Brockway v. Department of Air Force,* 518 F.2d 1184, 1186 (8th Cir.1975). Plaintiff concedes that the requested information is financial or commercial and obtained from a person outside the government. Therefore, the only issue to be resolved is whether the information is confidential. The parties agree that the drill hole data qualifies as confidential for purposes of exemption four "if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks I,* 498 F.2d at 770 (footnote omitted). Plaintiff contends that defendants have satisfied neither prong of this test.

### A.

■ Under the first prong of the *National Parks I* test for confidentiality, defendants must establish at the outset that the drill hole information is necessary. Necessary information means information that would be "particularly helpful" to an agency in carrying out its mandate; it is not required that the information be "absolutely essential" to agency operations and procedures. *9 to 5 Organization for Women Office Workers v. Board of Governors of Federal Reserve System,* 721 F.2d 1, 10 (1st Cir.1983).

The Forest Service pursuant to 36 C.F.R. § 228.1 (1983) regulates the "use of the surface of National Forest System lands" by mineral explorers such as Union Carbide "so as to minimize adverse environmental impacts on National Forest System surface resources." In accordance with these regulations (36 C.F.R. § 228.4(a)), Union Carbide submitted a "plan of operations" to the Forest Service for approval. Union Carbide included in its plan of operations the drill-hole data at issue in this case. Defendants concede that the drill-hole information is not specifically required as part of the plan of operations. *See* 36 C.F.R. § 228.4(c). They also concede that such information is not necessary in order for the Forest Service (1) to adequately protect both surface and ground water resources; (2) to ensure adequate reclamation activities—specifically the isolation, removal and control of toxic materials and the reshaping and revegetation of disturbed areas, or (3) to perform inspections of the exploration project. *See* Defendants' Replies to Interrogatories Listed in Court Order of August 31, 1982 and Amended Order of September 2, 1982 at 4–5, interrogatories nos. 9, 11, 15. Defendants nevertheless contend that "it is pursuant to 36 C.F.R. § 228.13(b) necessary to know the approximate number and depths of drill holes proposed and the general location of operations to prepare an estimate of the reclamation costs, which estimate is used to determine the amount of the reclamation bond." *Id.* at 5, interrogatory no. 13. They also contend the drill-hole data is

necessary in order for the Forest Service to discharge its day-to-day responsibilities over surface resources and to promote long-term planning obligations.

Although courts normally will defer to the judgment of the agency in determining what information is particularly helpful in fulfilling its statutory obligations, *see 9 to 5 Organization,* 721 F.2d at 10, here it is uncontroverted that the drill hole data submitted by Union Carbide "went beyond the requirements" of 36 C.F.R. § 228, Affidavit of Kenneth K. Smallwood, U.S. Forest Service, at 3; *see* Affidavit of Raymond M. Housley, Associate Deputy Chief, U.S. Forest Service, at 3, ¶¶ 7, 8, and is therefore not particularly helpful to the Forest Service. Union Carbide included the drill hole data in its submissions primarily to further the Forest Service processing of and eventual approval of the Union Carbide plan of operations. The allegations of need put forth by defendants are general and conclusory in scope. *See* Defendants' Replies to Interrogatories, *supra,* at 5, interrogatory no. 13, (necessary to know "approximate" number and depths of proposed drill holes and "general" location of holes in order to estimate relocation costs); Affidavit of defendant Raymond M. Housley, *supra,* at 3, ¶ 7: (such information "is extremely useful for effective planning for surface protection and management of all forest resources"); Affidavit of Kenneth K. Smallwood, *supra,* at 4 (this data has "significant value to the Forest Service during the land and resource management planning process.") On this record the court concludes that precise drill hole information such as that submitted to the Forest Service by Union Carbide is not particularly helpful, and therefore not necessary, to the Forest Service in fulfillment of its statutory responsibilities, as specified in 36 C.F.R. §§ 228.1–15.

Even assuming the drill hole data satisfies the threshold test of necessity under the first prong of the *National Parks I* test for confidentiality, defendants have failed to sustain their burden of proving that disclosure will likely impair the ability of the Forest Service to obtain similar information in the future. The only evidence supplied by defendants in support of their motion for summary judgment on this point is the affidavit of Raymond Housley. That affidavit alleges that "release of the information covered by this action would risk a severe hardship to the Forest Service by potentially crippling its ability to obtain vital information, which a mineral explorer is not legally required to supply." Affidavit of Raymond M. Housley, *supra,* at 3, ¶¶ 7, 8. This conclusory allegation of impairment is insufficient to support defendants' claim of confidentiality under the first prong of the *National Parks I* test. *See Washington Post Co. v. U.S. Department of Health, Etc.,* 690 F.2d 252, 269 (D.C.Cir. 1982), (conclusory affidavit of agency official provides insufficient factual basis for agency claim of confidentiality under first prong of *National Parks I* test). *See also Orion Research, Inc. v. E.P.A.,* 615 F.2d 551, 554 (1st Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980) (conclusory allegations by agency of impairment to obtain similar information in future—not "plausibly supported in some detail"—are insufficient).

Finally, this court notes that any fears entertained by the Forest Service that disclosure of the drill hole data will likely impair its ability to obtain similar information in the future can be remedied by amending 36 C.F.R. § 228.4(c) to specifically require inclusion of the precise drill hole locations, numbers and depths. In this way the Forest Service can condition the approval of a mineral explorer's operating plan on the submission of precise drill hole data. *See Comstock International v. Export-Import Bank of U.S.,* 464 F.Supp. 804, 809 (D.C.D.C.1979) (agency's fears that disclosure of certain progress reports will impair ability of agency to obtain similar, candid information in future may be valid but if so, agency can remedy problem by making reporting requirements more specific.)

## B.

Under the second prong of the *National Parks I* test for confidentiality, defendants

must present "specific factual or evidentiary material," *Pacific Architects and Engineers, Inc. v. Renegotiation Board,* 505 F.2d 383, 385 (D.C.Cir.1974), establishing that (1) Union Carbide "actually face[s] competition, and (2) substantial competitive injury would likely result from disclosure." *National Parks and Conservation Association v. Kleppe,* 547 F.2d 673, 679 (D.C.Cir. 1976) (*National Parks II*).

■ The Court in relation to these two elements "need not conduct a sophisticated economic analysis of the likely effects of disclosure." *Public Citizen Health Research Group v. F.D.A.,* 704 F.2d 1280, 1291 (D.C.Cir.1983). However, "[c]onclusory and generalized allegations of substantial competitive harm ... are unacceptable and cannot support an agency's decision to withhold requested documents." *Id.*

Defendants in support of their motion for summary judgment on the second prong of the *National Parks I* test present this court with no evidence other than two affidavits signed by officials of the Forest Service. The affidavit of Kenneth Smallwood, a geologist in the Forest Service, states:

> [T]he confidential information could, if released, clearly cause competitive harm to [Union Carbide]. This is because trained persons after acquiring information on proposed drillhole locations, spacings, and the planned hole-depths, have thereby gained clues as to the results of preliminary work and of possible economic potential. That is, an increasing density of drillholes indicates that an ore deposit of apparent economic value has been discovered and its extent is being defined.
>
> Competitors, then, with a knowledge of the density and depths of drill-holes and their alignment can project possible ore trends both laterally and vertically. They can proceed to locate claims along these projections. Thus, competitors may gain control over a substantial part

of the mineral resources at the expense of the company doing the initial work. Affidavit of Kenneth K. Smallwood at 4–5.

Likewise, the affidavit of defendant Raymond Housley, Associate Deputy Chief, U.S. Forest Service, declares:

> [I]t is my opinion that release of the requested data would place [Union Carbide] in an extremely vulnerable, and consequently risky position with regard to competitors in the industry. Because categorical legal rights to the minerals being sought have not attached to these explorers, other interested companies could still locate claims within the same areas subject to this action. Such companies would have great advantage in knowing the locational information obtained by [Union Carbide] because they would be saved the expenditure and effort, and still could proceed rapidly with locations to mineral claims.

Affidavit of Raymond M. Housley at 3, ¶ 6.

After carefully reviewing these affidavits the court is unable to conclude that defendants have met their burden of proof by specific factual or evidentiary material that: (1) Union Carbide faces actual competition, and (2) Union Carbide would likely suffer substantial competitive harm from disclosure. For the most part, these affidavits contain conclusory and generalized allegations of competitive harm. *Cf. Washington Post Co. v. U.S. Dept. of Health, Etc.,* 690 F.2d at 269. They do not sufficiently apprise the court of the nature and extent of competition in the mineral exploration industry, especially with respect to exploration on public lands, title to which lies in the United States. It is significant that Union Carbide itself has not submitted an affidavit addressing these matters. The affidavits of Smallwood and Housley furthermore fail to conform to the rules governing the form of affidavits submitted in support of a motion for summary judgment. Federal Rule of Civil Procedure 56(e) provides that with respect to a motion for summary judgment "[s]upporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The Smallwood and Housley affidavits fail to address the issue whether Union Carbide faces actual competition over uranium exploration locations in the Black Hills. To the extent they address the competitive aspects of uranium exploration drilling on public lands, these affidavits are not based on the affiants' personal knowledge of the industry. Finally, these affidavits fail to show affirmatively that the affiants are competent to testify as to whether disclosure would likely result in substantial competitive harm to Union Carbide.

### IV.

■ Defendants lastly contend that the drill-hole data is exempt from disclosure under exemption nine of the FOIA, which applies to "geological or geophysical information and data, including maps, concerning wells." 5 U.S.C. § 552(b)(9). There appears to be no relevant case law authority defining the scope of this exemption. Based on the plain language and legislative history of exemption nine, the court concludes that defendants have failed to sustain their burden of proving that the drill-hole information falls within the exemption.

The exemption nine reference to "geological and geophysical information and data" suggests to this court that the exemption applies only to well information of a technical or scientific nature. Moreover, the available legislative history suggests that exemption nine was intended to be limited in scope to scientific or exploratory findings concerning well drillings. A 1966 House of Representatives report declares the purpose of exemption nine as follows:

> This category was added after witnesses testified that geological maps based on explorations by private oil companies were not covered by "trade secrets" provisions of present laws. Details of oil and gas findings must be filed with Federal agencies by companies which want to lease Government-owned land. Current regulations of the Bureau of Land Management prohibit disclosure of these details only if the disclosure "would be prejudicial to the Government" (43 CFR, pt. 2). Witnesses contended that disclosure of seismic reports and other exploratory findings of oil companies would give speculators an unfair advantage over the companies which spent millions of dollars in exploration.

H.R.Rep. No. 1497, 89th Cong.2d Sess. 11 (1966), U.S.Code Cong. & Admin.News 1966, p. 2418, *reprinted in* Freedom of Information Act Source book: Legislative Materials, Cases, Articles, Subcomm. on Administrative Practice and Procedure of the Comm. on the Judiciary, 93d Cong. 2d Sess. 32 (1974).

Plaintiff seeks to discover only the number, locations, and depths of Union Carbide's proposed exploration drill-holes. This sort of information falls short of the technical and scientific information envisioned by Congress. In keeping with the command that FOIA exemptions be construed narrowly, the court concludes that the drill-hole information falls outside exemption nine.