**COVINGTON & BURLING, Plaintiff,**

**v.**

**FOOD AND NUTRITION SERVICE OF the UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

Civ. A. No. 88–3713 SSH.

United States District Court,
District of Columbia.

June 11, 1990.

Arvid E. Roach, II, Clare M. Elmendorf, Thomas J. Brown, Washington, D.C., for plaintiff.

Asst. U.S. Atty. Nathan Dodell, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This Freedom of Information Act (FOIA), 5 U.S.C. § 552, matter is before the Court on the parties' cross-motions for summary judgment, the parties' replies, and the entire record.

The underlying facts are as follows. Plaintiff represents the State of Utah in a matter relating to a food stamp quality control error-rate penalty that the Food and Nutrition Service (FNS) has levied against the State of Utah for federal fiscal year (FY) 1983. Presently Utah is contesting the penalty in an administrative review proceeding before the State Food Stamp Appeals Board of the United States Department of Agriculture.

In the course of representing Utah in that proceeding, plaintiff requested documents which it felt were necessary to Utah's appeal. FNS, after a protracted series of interactions and requests, released some documents in full, released others in redacted form, and refused to release other documents under § 552(b)(5). Plaintiff brought this action claiming that FNS conducted an inadequate file search and that FNS is unlawfully withholding documents or parts of documents.

### Background

The State of Utah participates in the Food Stamp Program (FSP). 7 U.S.C. § 2011 *et seq.* Under the FSP, states assume responsibility for certification of eligible individuals, for the issuance of coupons, and for the control and accountability thereof. 7 U.S.C. § 2020(a). States are eligible to receive 50 percent of all administrative costs involved in each state's operation of the FSP. 7 U.S.C. § 2025(a). However, the FSP also provides sanctions for states which operate the program inefficiently. FNS has the authority to sanction or reduce the state's funds if the state fails to meet certain quality control error rate goals. If the FNS determines that a state has failed to meet the quality standards, FNS must notify the state of its liability and give the state 30 days notice so that the state may seek a good cause waiver or a reduction of its liability. 7 C.F.R. § 275.25. Under 7 U.S.C. § 2025(d) and 7 C.F.R. § 275.23(e)(5), states may request that FNS waive penalty assessments for good cause. FNS may determine good cause based upon, among other factors, natural or civil disasters which adversely affect the FSP, significant caseload growth, changes in the federal or state FSP program which adversely impact upon the management of the FSP, and other circumstances beyond the control of the state. If FNS makes a determination, based on the criteria set forth in 7 C.F.R. § 275.25d(5), that good cause does not exist, it is to promptly issue a billing. *See* 7 C.F.R. § 275.25d(4)(i). If FNS determines that the state had good cause for not achieving its error rate goal, FNS is to reduce or eliminate the state's liability "as appropriate." 7 C.F.R. § 275.25d(5)(ii).

FNS determined that Utah's error rate was too high, and thus notified Utah that it was subject to a reduction of its federally funded share of administrative costs for FY 1983. Utah asked FNS to waive its penalty. Utah claimed it was paralyzed by record floods, it experienced rapid caseload growth, and that dramatic changes were implemented in the FSP. It contended that because of these factors and the uncontrollable costs incurred as a result of food stamp recipients errors, Utah should not be held accountable for its unacceptable quali-

ty rating. After considering Utah's petition, FNS waived half of the penalty on the basis of caseload growth, but reasserted the legitimacy of the rest of the sanction.

Utah requested administrative review of all aspects of the penalty before the State Food Stamp Appeals Board (Appeals Board). Proceedings before the Appeals Board are informal. It is not bound by the rules of civil procedure or by the adjudicatory requirements of the Administrative Procedure Act. 7 C.F.R. § 276.7(h)(1). The Appeals Board does not have authority to issue or enforce subpoenas or to compel document production.[1]

In Appeals Board proceedings, FNS must submit all relevant and helpful documents compiled by FNS in support of its claim prior to the state's presentation of its case. 7 C.F.R. § 276.7(g)(2). Accordingly, Utah filed a motion asking the Appeals Board to compel FNS to include specific documents, including materials relating to the calculation of Utah's target rate, error rate, and sanction amount; correspondence and reports concerning Utah's management of

the FSP; and information about FNS's policies and practices on good-cause waivers of penalties during the pertinent years. The Appeals Board instructed FNS to include the requested documents in its submission on the appeal. However, FNS declined to include the requested documents, and the Appeals Board notified plaintiff that it did not have the authority to compel FNS to produce the requested documents.

Plaintiff then sought to obtain the information through a FOIA action. The Appeals Board granted plaintiff several extensions of time in which to file its appeal brief before proceeding. The proceeding had been set for mid-May. The case now before the Court is a result of the ongoing dispute between plaintiff and FNS as to the requested documents. It focuses on 108 documents.[2] All but 11 of those were released in a redacted form. The remaining 11 were not released at all.[3]

### Arguments

 The agency has the burden of proving that material withheld under FOIA is

---

1. Congress has amended this so that beginning in FY 1986, food stamp error sanction appeals go before administrative law judges who have the authority to issue and enforce subpoenas and to control discovery. 7 U.S.C. § 2023(a).

2. Without addressing in detail the interactions between plaintiff and FNS regarding the FOIA requests, the materials that FNS has withheld in part or in full challenged by plaintiffs are as follows:

| FOIA Request | Description | FNS Index |
|---|---|---|
| 1 | Penalty-amount documents<br>**Discussion/Issue Papers**<br>**(Defendant's category A)** | 1–3 |
| 4 | Utah program waiver documents<br>**Regional Office Recommendations**<br>**Concerning Utah Requests for**<br>**Waivers of Ongoing Program**<br>**Requirements**<br>**(Defendant's category C)** | 4–28 |
| 6 | Caseload-growth methodology documents<br>**Discussion/Issue Papers**<br>**(Defendant's category A)** | 29–34 |
| 7 | Good-cause waiver analyses<br>**Good Cause/Liability Analyses**<br>**(Defendant's category B)** | 35–94 |
| 6 | Additional good-cause waiver methodology documents<br>**Draft Methodologies Under Consideration**<br>**(Defendant's category D)** | 95–105 |
| 9 | Utah program management reports<br>**Discussion/Issue Papers**<br>**(Defendant's category A)** | 106–08 |

(Note: The parties categorized the documents differently. Plaintiff's categorizations are in regular print; defendant's are in **bold print**.)

3. Documents No. 95–105 were not released at all.

exempt from disclosure. FNS contends that the exemptions have been correctly applied to the documents and moves for summary judgment. FNS has supported its motion with a *Vaughn* index which describes each of the documents at issue, and with several affidavits explaining the decision-making process at FNS. Plaintiff argues in its cross-motion that FNS has failed to meet its burden. First, plaintiff argues that the necessity for privilege must be demonstrated with particularity and that FNS has failed to give precise and certain reasons for preserving the confidentiality of the withheld documents. Second, plaintiff claims that FNS has failed to show that the materials are an essential part of the deliberative process, and thus that the materials should be disclosed. Third, plaintiff alleges that FNS's withholding is overly broad as it failed to disclose (1) documents that explain or constitute the agency's decision and (2) documents that contain recommendations that were adopted as agency decisions. In addition, plaintiff argues that FNS has failed to disclose post-decisional materials which are explanatory and are not exempt. Fourth, plaintiff argues that FNS has waived any deliberative-process privilege applicable to the withheld documents. Lastly, plaintiff states that FNS has failed to demonstrate the adequacy of its search for responsive documents.

### Disclosure Under Exemption Five

■ The FOIA exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption, commonly referred to as exemption five, permits disclosure of documents which routinely would be disclosed in private litigation, but exempts documents normally privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975); A. Adler, *Freedom of Information Act and Privacy Act,* at 89 (14th ed. 1989) (citing H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966). As such, exemption five incorporates several discovery privileges such as (1) the deliberative process exemp-

tion which protects advice, recommendations, opinions, and other such material which is part of the deliberative, consultative, decision-making processes of government; (2) the attorney work-product privilege; and (3) the attorney-client privilege. *NLRB v. Sears, Roebuck & Co.,* 95 S.Ct. at 1516; *Mead Data Central, Inc., v. Dep't of the Air Force,* 566 F.2d 242 (D.C.Cir.1977). FNS focuses on the deliberative process and the attorney-client privileges to justify non-disclosure of certain documents or portions of documents.

### The Deliberative Process Privilege

■ The deliberative process privilege has three purposes: "(1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for the agency's action." R. Bouchard, *Guidebook to the Freedom Of Information and Privacy Acts,* at 44, (1985 Supp.) (citations omitted). To fit within this privilege, documents must be predecisional drafts, opinions, recommendations, or reports which were prepared in conjunction with an agency's decision-making process. *NLRB v. Sears, Roebuck & Co.,* 95 S.Ct. at 1516, *Jordan v. Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir.1978) (*en banc*). That is, the document must have been generated before the adoption of an agency policy and it must reflect the give-and-take of the deliberative process. *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987). *See also Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (stating that "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are examples of predecisional deliberative materials). The agency has the burden of demonstrating how the documents fit into the decision-making process in a manner that makes

them predecisional, directly related, and thus exempt. *Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 258 (D.C.Cir.1982).

 The deliberative process privilege is not without bounds. Documents which have been expressly adopted by the agency or which in effect are final decisions are not exempt. *NLRB v. Sears, Roebuck & Co.,* 95 S.Ct. at 1523–24. *See also Vaughn v. Rosen,* 383 F.Supp. 1049 (D.D.C.1974), *aff'd,* 523 F.2d 1136 (D.C.Cir.1975). In addition, the deliberative process privilege is generally inapplicable to purely factual matters, or to factual sections of deliberative memoranda unless the facts are "inextricably intertwined" with deliberative material. *The Guidebook to the Freedom of Information Act and Privacy Act,* at 47–48 (citing *Ryan v. Dep't of Justice,* 617 F.2d 781, 790–791 (D.C.Cir.1980)). And, of course, the deliberative process privilege does not apply to post-decisional explanatory documents. *See, e.g., NLRB v. Sears, Roebuck & Co.,* 95 S.Ct. at 1517; *Bristol–Myers v. FTC,* 598 F.2d 18, 25 (D.C.Cir.1978).

*Need for Particularity in Deliberative Process Privilege Claims*

 Plaintiff claims that FNS has failed to give detailed reasons for each document withheld and each segment redacted. Plaintiff argues that FNS's Dunn declaration does not, with the necessary degree of clarity or detail, explain why the withheld documents fall into the claimed exemptions. FNS argues that it should be awarded summary judgment based on its affidavits and *Vaughn* index.

Summary judgment may be awarded to an agency withholding documents only if the agency provides "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. Dep't of Justice,* 830 F.2d 210, 219 (D.C.Cir.1987) (citing *Mead Data Central,* 566 F.2d at 251). The agency has the burden of stating the exemption claimed for each deletion or withheld document and explaining the applica-

bility of the exemptions it invokes as to each document withheld, or segment redacted. *King v. Dep't of Justice,* 830 F.2d at 224. An agency may use affidavits to accomplish this task; however, the affidavits may not be "conclusory, merely reciting statutory standards" nor may they be "too vague or sweeping." *Allen v. CIA,* 636 F.2d 1287, 1291 (D.C.Cir.1980) (quoting *Hayden v. NSA,* 608 F.2d 1381, 1387 (D.C. Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). *See also, King v. Dep't of Justice,* 830 F.2d at 219. The agency's affidavits must be such that: (1) the Court and the plaintiff are given notice that the agency analyzed carefully the material withheld; (2) the Court can fulfill its duty of ruling on the applicability of the exemption; and (3) they give the plaintiff as much information as possible. *Keys v. Dep't of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987). Thus, the agency must walk the difficult line between giving enough detail to identify the document or segment and demonstrate how it falls into the claimed exemption, without exposing in the process the document or redacted segment that the agency claims should remain confidential.

FNS has provided plaintiff and the Court with a fairly detailed description of the documents it has withheld or redacted. FNS divided the withheld portions into four general categories: (1) Discussion Issue papers which FNS standardly uses to develop and discuss unresolved policy issues; (2) Good Cause/Liability Analyses which reflect specific quality control policy issues debated by FNS; (3) Regional Office Recommendations Concerning Utah Requests for Waivers of Ongoing Program Requirements which reflect the FNS's procedure of having the regional areas do the initial analysis of a state's request for waivers; and (4) Draft Methodologies Under Consideration, which are documents which pertain to memoranda or issue papers containing or addressing draft methodologies under consideration by the agency. FNS then addressed each document, placing it into the appropriate group, giving the nature of the decisional matter involved, and, if a final decision had been rendered, the date

of that decision. In explaining the hierarchy of the decision-making process within FNS, defendant provided the Court with the function and significance of the documents within that decision-making process.

The Court finds, with exceptions which will be addressed below, that FNS fulfilled the particularity requirements set by the FOIA.[4] FNS has not fulfilled its duty with several documents. The Court finds that the descriptions given of the following documents are inadequate: No. 17 (as to missing attached documents), No. 30, No. 81 (as to missing attachment C), No. 97, No. 98, No. 100, No. 101, No. 102, No. 103, and No. 105. Accordingly, FNS is directed to provide more detailed information as to why the contents of these documents should be exempt.

### Relation of Documents to the Deliberative Process

■ Plaintiff argues that in order to fall within this exemption, a document must be "an essential element" in the deliberative process. (Plaintiff's opposition at 14, citing *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir.1980).) FNS argues that a less restrictive standard applies. The parties are dealing in subtle distinctions. Documents must be "a direct part of the deliberative process." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C.Cir.1975). To be ruled predecisional, the court must "be able to pinpoint an agency decision or policy to which these documents contributed." *Paisley v. CIA*, 712 F.2d 686, 698 (D.C.Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C.Cir.1984). *See also, Senate of Puerto Rico v. Dep't of Justice*, 823

F.2d at 584–85. The Court acknowledges that FNS did not describe specific agency decisions in each individualized description of each document. *See, e.g.,* documents No. 41—No. 47. However, FNS does pinpoint the agency policy or final decisions in which the documents played a role in the categorized section of FNS's description.[5] In addition, by supplying the Court and plaintiff with a hierarchy of decision-making analyses, FNS provides a framework for understanding how the documents reflect the "give-and-take of the consultative process." *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d at 585. There are only a few instances in which the Court found that FNS did not adequately describe how the document or redacted portion of the document fit into the predecisional process. FNS does not adequately describe the predecisional role of document No. 22, a letter regarding the implementation of Final MRRB Regulations. FNS redacts the months listed in the attachment regarding caseload size and change in document No. 63 and the months in document No. 82, exhibit 2, without adequate justification. In addition, the Court does not understand how sample case findings in document No. 64 and the participation statistics redacted on pages 2 and 3 of document No. 65 are predecisional and not factual. *See Schwartz v. IRS*, 511 F.2d 1303 (D.C.Cir. 1975) (stating that factual information may not be withheld under this exemption). Finally, FNS fails to adequately describe the predecisional role of documents No. 106, No. 107, and No. 108. Accordingly, the above mentioned documents or sections of documents must be provided.

4. The Court notes that several of FNS's descriptions were somewhat sketchier than the Court would like, but in reading the documents, the large amount of unredacted material reveals that the redacted material is indeed predecisional and exempt. *See, e.g.,* documents No. 49 and No. 50.

In addition, the documents demonstrate a natural progression from the regional offices, which have little decision-making authority, to the Administrator, who granted or denied the waivers.

5. Defendant alleges that the final methodologies and explanations involving the FY 1984 waiver

requests were made available in January 1989. Plaintiff claims that the short analyses given by FNS do not reflect the standards used by FNS to reach its January 1989 waiver conclusion. The Court compares the final methodology made available in January 1989 to one of the draft methodologies prepared by the regional office. (Document No. 63.) The Court concludes that for the most part the final document reflects the original analysis. It is obvious that some paring was done, and several suggestions were rejected or revamped.

*Statements of Policy or Interpretations Which Have Been Adopted by the Agency*

Plaintiff claims that FNS's withholding is overly broad. Plaintiff alleges that FNS has withheld documents which explain the final decision or which were expressly adopted by FNS. FNS claims that all the redacted or withheld documents are predecisional and merely reflect initial analysis of the waiver requests.

 Exemption five never applies to final opinions; it rarely applies to "statements of policy and interpretations which have been adopted by the agency" and staff instructions which affect the public. *NLRB v. Sears, Roebuck & Co.*, 95 S.Ct. at 1518; *Schwartz v. IRS*, 511 F.2d at 1305–06 (even deliberative internal memorandum is not protected if it "represent[s] policies, statements or interpretations of law that the agency has actually adopted."); A. Adler, *Freedom of Information Act and Privacy Act*, at 91. Documents which are "publicly cited by an agency as the sole basis for agency action," or are "formally incorporated as part of a final order" or reflect policy already made and announced, are not exempt. *Schwartz*, 511 F.2d at 1306. On the other hand, documents which are persuasive, or advisory in nature rather than obligatory, are usually exempt unless expressly adopted. Furthermore, documents which are generated by those who have no authority to make final decisions seldom have the force of law. *See Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57; *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C.Cir. 1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). Documents "from a subordinate to a superior official [are] more likely to be predecisional." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 868.

The parties spent a great deal of time discussing how many final decisions were made by the FNS as to the granting or denying of a waiver and what, if any, methodologies were used in arriving at the final decision.[6]

It is obvious to the Court that the decision-making process is twofold. *See* 7 C.F.R. § 275.25. Accordingly, documents can be predecisional because they are part of the deliberative process of either or both decisions.

First, FNS deliberates on whether or not a state is eligible for a good cause waiver; 7 C.F.R. § 275.25d(5)(i) sets specific criteria for this decision. In making this determi-

---

**6.** Plaintiff's argument is that a decision to grant the good cause waiver and the determination of the amount of the waiver are intertwined. Plaintiff alleges that there is no way that FNS can make determinations regarding the validity of good cause waivers without some sort of methodology. Plaintiff points to document No. 29, a letter from FNS to the Office of Management and Budget, which includes a sentence stating that:

> [g]iven the Secretary's discretion in this area, the Food and Nutrition Service has established a methodology to determine the amount of a partial waiver of liability. We have enclosed an issue paper which describes this methodology for partial waivers based on caseload growth.

Plaintiff claims that this proves that a methodology was used to determine good cause waivers which is reflected in the redacted documents. Plaintiff also alleges that documents No. 99–105 reflect postdecisional explanations of the FY 1983 decisions. Accordingly, plaintiff argues that these documents should be released.

FNS asserts that the usual deliberative process is as follows. First, the regional office analyzes state waiver requests. The regional office makes recommendations as to whether the regulatory criteria (that is, natural disaster, case growth, etc.) have been met, and whether or not a waiver should be considered. Those initial analyses are set to the FNS's national office, which reviews the draft analyses and makes a final review and analysis. Then the FNS Administrator, who has been given discretionary authority by the Secretary, reviews the national office's recommendations and analysis and decides whether, based on the regulatory criteria, to grant or to deny a good cause waiver. Once that initial determination is made, the deliberative process begins again with the national office selecting a methodology for the determination of the amount of the good cause waiver. The national office then provides the Administrator with a good cause waiver analysis discussing the options under consideration and the staff recommendations as to the amount of the waiver. The Administrator then sets the methodology after running the suggested methodology by the Office of Management and Budget (OMB).

nation, FNS considers whether or not a state has given enough documentation and justification to fall into one or more of the prescribed regulatory good cause categories. FNS analyzes whether the state connected the regulatory criteria with the failure to meet the quality control rate.[7] The documents created by the regional offices demonstrate that the regional offices sift through the states' requests, summarize them, and analyze them in relation to the regulatory criteria. No separate methodologies or criteria have been established for making this determination. The regional offices rely on the regulatory criteria. They follow the guidelines set forth by FNS.[8] They are sent to the national office so that the national office may review the documents, and compare them to other regional analyses. The national office then prepares similar documents for the Administrator who has the decision-making power and authority.[9] Documents which are "prepared in order to assist an agency decision maker in arriving at his decision" are exempt from disclosure. *Renegotiation Board v. Grumman Aircraft Eng. Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). Thus the Administrator makes the first decision, based on the regional office's and national office's recommendations, on whether a state fits into one or more of the good cause exemptions.

The second aspect of the decision-making process does involve setting forth certain methodologies which determine, once a state is found to fall within a good cause category, the amount of sanction that should be waived. There are no regulatory criteria set for this.[10] *See* 7 C.F.R. § 275.25d(5)(ii) (stating the FNS should reduce or eliminate liability "as appropriate"). Methodologies for determining the sanction waiver amounts are determined at this stage.

█ Keeping the circumstances under which the decisions are made and the deliberative process occurs in mind, the Court finds that the documents withheld, with two exceptions, are predecisional and exempt. One exception is the issue paper provided to the OMB by FNS in document No. 29. To the extent that the issue paper was expressly adopted by FNS it must be released. Portions which were changed after discussions with OMB are exempt and may be redacted.[11] The second exception is the issue paper noted in document No. 104 involving quality control waiver methodologies based on natural disasters and implementation of MRRB. To the extent that this was adopted without change, it must be released.

### FNS's Alleged Waiver of the Deliberative Process Privilege

█ Plaintiff claims that FNS has waived its deliberative process privilege by releasing substantially similar documents. Plaintiff cites documents regarding good cause waivers which were released in previous years. Plaintiff claims these documents are indistinguishable. The Court has reviewed the released documents sup-

---

7. For example, it is not enough to have several counties that were declared disaster areas; a state must document that as a result of the natural disasters the state had dramatic increases in its FSP error rates.

8. *See* plaintiff's cross-motion for summary judgment, exhibit L. In a letter sent to the regional offices, they were told to prepare analyses which include point and counterpoint analysis of each argument presented by the state; documentation supporting the arguments; issue-related arguments; and issues raised by the state.

9. This does not appear to be an area where FNS is developing a system of "secret law." The guidelines/methodology used by FNS is consideration of the statutory good cause criteria.

10. The Court notes that in plaintiff's motion for summary judgment, exhibit K, FNS discusses the pro's and con's of having set methodology criteria.

11. The Court also notes that in document No. 67, FNS states that it "routinely reviews and provides comments to states on draft and final policy materials." Any such comments which are within the scope of plaintiff's FOIA request and not exempted by the parties' agreement not to require production of documents produced in the Alaska litigation must be produced. (Document No. 67, at 6.)

plied by the plaintiff and find they are distinguishable. In addition, documents which contain opinions and reflections on the applicability of a good cause waiver for one year do not necessarily mirror that for the next year. Opinions, facts, law, and options might change. The Court finds no waiver of the privilege based on this argument.

### Attorney–Client Privilege

FNS withholds several documents based on the attorney-client privilege which is incorporated in exemption five. Plaintiff claims that FNS has not met the requirements for exemption under this portion of the privilege.

■ The attorney-client privilege is narrowly construed and is limited to those situations in which it protects disclosures necessarily made to obtain informed legal advice which might not have been made absent the privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C.Cir.1980) (citing *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)). Confidentiality is another important consideration. If the disclosures are not held in confidence, they are not exempt. However, it is acknowledged that "[w]hen the client is by nature a group, as is true of both the government and corporations, the courts have agreed that the privilege should not be defeated by *some* limited circulation beyond the attorney and the person within the group who requested the advice." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 863. (Emphasis in original.)

■ Plaintiff argues that the documents reflect a breach of that confidentiality because several FNS officials had access to the legal advice. The Court disagrees; individuals who had access to the information are limited. Lipsman, Director, Program Accountability Division, Hill, Acting Assistant General Counsel, Dunn, Acting Deputy Administrator, Family Nutrition Programs, and Crow, Associate Administrator, are the only ones who received the documents which FNS has withheld under the attorney-client privilege. All four are high-level FNS officials, and while they might not have final decision making authority, they are not simply administrative lackeys. This does not constitute a random or unlimited disclosure which would defeat a confidentiality claim.

### Adequacy of FNS's File Search

■ Plaintiff alleges that FNS's motion for summary judgment should be denied because FNS has failed to conduct an adequate file search. An agency has the burden of proving that its efforts to search for responsive documents were "reasonable." *See Founding Church of Scientology v. NSA*, 610 F.2d 824, 836–37 (D.C.Cir. 1979). An agency may use affidavits to meet its burden. The affidavits must "explain in reasonable detail the scope and method of the search conducted by the agency," but they "need not set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir. 1982). However, just because a search fails to produce all relevant material does not mean that it was unreasonable. *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C.Cir. 1986); *Lawyers Committee for Human Rights v. INS*, 721 F.Supp. 552 (D.D.C. 1989).

Although the Court feels that there is a chance that all applicable documents were not discovered by the search described by FNS, the Court finds that FNS has met its burden.[12] In addition, the Court does not find evidence of bad faith on the part of the agency. FNS has produced relevant documents, and the Court expects that it will continue this practice.

### Summary

Plaintiff contests FNS's FOIA production on several grounds. FNS filed a motion for summary judgment and plaintiff filed a cross-motion for summary judgment. After careful review of all the documents and filings, the Court concludes that plaintiff's motion for summary judg-

12. The Court refers to the Batko, Nickels, and Dunn declarations and the Carpenter letters.

ment should be granted only in respect to documents No. 22, 29, 63, 64, 65, 82, 104, 106, 107, and 108, as set forth in this opinion. The Court denies both parties' motions as to some of the documents. FNS did not adequately describe the following documents: No. 17, No. 30, No. 81, No. 97, No. 98, No. 100, No. 101, No. 102, No. 103, and No. 105. FNS must provide further information justifying their exemption or release the documents in unredacted form. FNS's motion for summary judgment is granted for the remaining documents.