BAY AREA LAWYERS ALLIANCE FOR NUCLEAR ARMS CONTROL, an Unincorporated Association, Plaintiff,

v.

DEPARTMENT OF STATE, et al., Defendants.

No. C 89 1843 TEH.

United States District Court, N.D. California.

July 28, 1992.

1292

William A. Brockett, Julia Boaz–Cooper, Keker Brockett & Van Nest, San Francisco, CA, for plaintiff.

Dennis Mulshine, Vincent M. Garvey, Robin Ball, Margot E. De Ferranti, U.S. Dept. of Justice, Washington, DC, John A. Mendez, U.S. Atty., Stephen Schirle, Asst. U.S. Atty., San Francisco, CA, for defendants.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter comes before the Court on defendants' Motion for Partial Summary Judgment, filed with the Court on September 5, 1991. Plaintiff opposed the motion and submitted its own request to take discovery. Defendants' motion came on for oral argument on November 18, 1991. At that hearing, the Court ordered further briefing as to which *Vaughn* indexes and/or documents plaintiff either found sufficient or was no longer interested in. The parties conferred, and defendants have submitted redacted *Vaughn* indexes containing only those indexes which plaintiff feels are inadequate and cover documents responsive to plaintiff's inquiry. Having reviewed the disputed *Vaughn* indexes, and having considered the oral and written arguments of counsel, the Court has decided that defendants' motion should be **GRANTED IN PART AND DENIED IN PART** and that plaintiff's motion for discovery should be **DENIED.**

FACTUAL BACKGROUND:

Over two and a half years ago, plaintiff submitted to the Department of State (DOS) its request for documents under the Freedom of Information Act (FOIA). In that request, plaintiff requested four categories of information:

1. All steps taken by the Department of state (since approval of the Limited Test Ban Treaty of 1963) to achieve the discontinuance of all test explosions of nuclear weapons for all time.

2. All written records of any negotiations (since the United States approved the Limited Test Ban Treaty of 1963) furthering the end of achieving the discontinuance of all test explosions.

3. All records of any efforts spelled out in paragraphs 1 and 2 above which were in specific response to the preamble to the Non–Proliferation Treaty of 1970.

4. All records used or reports prepared by the Department of State which review any of the three topics above, and evaluate whether or not treaty obligations are being honored by the United States of America.

Plaintiff has requested that the government focus its response on "item 4" documents.

Defendants' search produced approximately 2500 potentially responsive documents. These documents were referred to their originating agencies, who determined whether they were in fact responsive, and if so, whether they could be disclosed. Many of the documents that were ultimately found to be responsive were disclosed in full to plaintiff. They are not the subject of this litigation. Many other documents were either withheld in part or in full. Plaintiff seeks the assistance of this Court in compelling disclosure of those withheld documents.

The DOS contends that it has located *no* documents responsive to item 4. In 1990, plaintiff sought discovery concerning the nature and scope of DOS's search, and sought documents which had been considered in that search. This court granted defendants a protective order, holding that "discovery is only proper in a Freedom of Information Act case after the defendant has had an opportunity to submit its justification for withholding documents responsive to a FOIA request by a dispositive motion." May 9, 1990 Order.

Upon stipulation of the parties, plaintiffs selected a sample of the 669 documents withheld by the DOS and the 851 documents withheld by the Arms Control Disarmament Agency (ACDA). Defendants were required to produce *Vaughn* indexes (descriptions of the withheld documents and justifications for their withholding) for those documents. Defendants have submitted those *Vaughn* indexes, which they claim explain why the documents were properly withheld under exceptions to FOIA. Based upon those indexes, DOS seeks summary judgment that it properly withheld the documents under FOIA exceptions 1 (classified information/national security), 3 (disclosure statutorily barred), and 5 (privileged information). 5 U.S.C. §§ 552(b)(1), (3) and (5). Only documents withheld under exceptions 1 and 5 are at issue in the present motion.

*DISCUSSION:*

## I. IMPROPER DEFENDANTS

■ As a preliminary matter, defendants move to dismiss James Baker, Secretary of State, and Peter Sheils, Chief, Information Access Branch, Department of State, from the suit. They allege, correctly, that under the FOIA, only agencies are proper parties to FOIA actions. 5 U.S.C. § 552(a)(4)(B). Plaintiff does not oppose this motion, and we GRANT this motion and dismiss these defendants.

## II. SCOPE OF SEARCH

Plaintiff has long had a problem with the scope of defendants' search because plaintiff simply does not believe that a proper search could produce *no* documents responsive to "item 4" of its request. It alleges that defendants' declarations concerning the manner and scope of the search demonstrate the need for discovery on this matter because some of the facts attested to are based upon "information and belief" rather than personal knowledge.

■ A FOIA search is adequate if it is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Department of Justice,* 745 F.2d 1476, 1485 (D.C.Cir. 1984), *reh. denied,* 763 F.2d 1436 (1985). An agency may prove the reasonableness of its search through the declarations of agency officials. *Exxon Corp. v. F.T.C.,* 466 F.Supp. 1088, 1093 (D.D.C.1978), *aff'd,* 663 F.2d 120 (D.C.Cir.1980). These declarations are not required to

> set forth with meticulous documentation the details of an epic search for the requested records. Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.

*Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir. 1982). Furthermore, the search need not turn up every existing potentially responsive or relevant document. *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986); *Covington & Burling v. Food & Nutrition Service,* 744 F.Supp. 314, 232 (D.D.C.1990). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the *search* for those documents was *adequate.*" *Weisberg,* 745 F.2d at 1485 (emphasis in original).

■ In the present case, plaintiff has made no showing that the search conducted was not adequate. Defendants' declarations are sufficiently detailed to establish the reasonableness and adequacy of a search and there is no countervailing evidence of bad faith or other shortcomings. There is no evidence other than that the search was "reasonably calculated to uncover all relevant documents." *Id.* Plaintiff's incredulity at the fact that no responsive documents were uncovered in response to one aspect of its search request does not constitute evidence of unreasonableness or bad faith. *See Weisberg,* 745 F.2d at 1486 (rejecting plaintiff's "speculative assertions that other documents exist or were not located"). Plaintiff's motion for discovery is **DENIED.**

### III. WITHHELD DOCUMENTS—SUFFICIENCY OF *VAUGHN* DECLARATIONS

■ FOIA creates a presumption in favor of disclosure of government documents. *Dept. of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). An agency may withhold a document *"only* if the information contained in the document falls within one of the nine statutory exemptions to the disclosure requirements set forth in § 552(b)." *Bowen v. U.S. Food and Drug Admin.,* 925 F.2d 1225, 1226 (9th Cir.1991) (emphasis in original). These exemptions are to be narrowly construed. *Cal–Almond, Inc. v. US Dept. of Agriculture,* 960 F.2d 105, 107 (9th Cir.1992); *United States Dept. of Justice v. Julian,* 486 U.S. 1, 7, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988). When a government agency refuses to disclose a document, the burden is on the agency to show that a FOIA exemption applies. 5 U.S.C. § 552(a)(4)(B); *Bowen, supra.*

Unlike "ordinary" civil cases, in a FOIA case the requester generally lacks the ability to challenge the government's assertions of exemption. The 9th Circuit has recognized that "[i]n a FOIA case ... because the issue is *whether* one party will disclose documents to the other, only the party opposing disclosure will have access to all of the facts." *Wiener v. F.B.I.,* 943 F.2d 972, 977 (9th Cir.1991) (emphasis added), *reh. denied,* 951 F.2d 1073 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 886

(1992). This lack of knowledge and power distorts the traditional adversary process, and skews the process in favor of the government. *Vaughn v. Rosen,* 484 F.2d 820, 824 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

> "In recognition of this problem, government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a '*Vaughn* index' identifying each document withheld, the statutory exemption claimed, and the *particularized* explanation of how disclosure of the *particular* document would damage the interest protected by the claimed exemption. The purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding. The index thus functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision."

*Wiener,* 943 F.2d at 977–78 (citations and internal quotations omitted) (emphasis added).

■ Thus, in order to prevail on a motion for summary judgment in a FOIA case, the defending party must prove, via its *Vaughn* indexes, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from FOIA's inspection requirements. *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978). The district court must examine those *Vaughn* indexes and conduct a *de novo* review of all exemption claims advanced. *King v. U.S. Dept. of Justice,* 830 F.2d 210, 217 (D.C.Cir. 1987).

■ Because FOIA cases stand in a different posture with regard to discovery than do other cases, the *sufficiency* of the agency's affidavits is of paramount import. "Specificity is the defining requirement of the *Vaughn* index." *Wiener,* 943 F.2d at 979, citing *King,* 830 F.2d at 219. The agency must disclose "as much information as possible without thwarting the [claimed] exemption's purpose." *King,* 830 F.2d at 224. That disclosure must demonstrate a "logical connection between the information and the claimed

exemption...." *Salisbury v. U.S.*, 690 F.2d 966, 970 (D.C.Cir.1982). If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further. 5 U.S.C. § 552(a)(4)(B); *Church of Scientology v. United States Dept. of the Army*, 611 F.2d 738, 742 (9th Cir.1979).

However, summary judgment may not be granted if the *Vaughn* indexes are "conclusory, merely reciting statutory language, or if they are too vague or sweeping." *King*, 830 F.2d at 219. The agency "must provide a relatively detailed justification, *specifically* identifying the reasons why a particular exemption is relevant and correlating those claims with the *particular* part of a withheld document to which they apply." *Id.* (citations omitted) (emphasis added); *see also King*, 830 F.2d at 217–18, and *Marks v. Dept. of Justice*, 578 F.2d 261, 263 (9th Cir.1978).

█ Furthermore, even if part of a document is FOIA exempt, the agency still must disclose any portions which are not exempt—i.e., all "segregable" information—and must address in its *Vaughn* index why the remaining information is not segregable. The district court must make specific factual findings on the issue of segregability to establish that the required *de novo* review of the agency's withholding decision has in fact taken place. *Wiener*, 943 F.2d at 988. The Court may not " 'simply approve the withholding of an entire document without entering a finding on segregability....' " *Id.*, citing *Church of Scientology*, 611 F.2d at 744.

█ The government is required to do more in its *Vaughn* indexes than merely indicate that the withheld information is a "type" generally excludable. The 9th Circuit has followed other circuits in rejecting the "categorical" approach of listing the "types of harms" that generally result when a "type" of information is disclosed. *See Wiener, supra.* Instead, the agency must describe "*each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of *disclosing the sought-after information.*" *King*, 830 F.2d at 224 (emphasis in original). "Categorical descriptions of redacted material coupled with indication of anticipated consequences of disclosure is clearly inadequate." *Id.*

In *Wiener*, the proffered indexes gave brief descriptions of the documents or portions withheld, and assigned the documents or portions a number which corresponded to an exemption (for example, "(b)(1)," or "(b)(5)"). The affidavit then stated why each *type* of information should be withheld, stating (for example) that

[i]nformation of this category is either specific in nature or of a unique character, and thereby could lead to the identification of a source. For example, this *information* may contain details obtained from a one-on-one conversation between a source and another individual. ...The nature of the information may be such that only a handful of parties would have access to it.

*Wiener*, 943 F.2d at 978.

The 9th Circuit held that such "boilerplate" explanations were inadequate to satisfy FOIA. "No effort is made to tailor the explanation to the specific document withheld.... The explanations offered are precisely the sort of 'categorical descriptions of redacted material coupled with categorical indication of anticipated consequences of disclosure' the D.C. Circuit properly rejected in *King* as 'clearly inadequate.' " *Id.*, citing *King*, 830 F.2d at 224. This is because the categorical approach "affords [the FOIA requester] little or no opportunity to argue for release of particular documents." *Id.* Thus, for example, when claiming an exemption based on "confidential source information," the agency must provide specific information sufficient to establish *whether* the source was truly confidential, *why* disclosure of the information would lead to exposure of the source, *and why* disclosure of the source could reasonably be expected to cause damage to the national security. *Id.* at 980. Anything less fails the essential purpose of a *Vaughn* index and is insufficient as a matter of law.

In the present case, defendants claim several exemptions to FOIA, only two of which are at issue in the present motion. Exemption 1, 5 U.S.C. § 552(b)(1), is the national security exemption. It permits the government to withhold documents and portions of documents which have been properly classified pursuant to Executive Order. The Ex-

ecutive Order currently in force authorizes the classification of documents "the unauthorized disclosure of which reasonably could be expected to cause damage to the national security." Exec.Order 12356 § 1.1(a)(3), 3 C.F.R. 166, 167 (1983). Information properly withheld pursuant to this exemption includes "confidential source information," "intelligence activities and methods," and "information about foreign relations and governments."

Exemption 5, permits withholding of "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes the "deliberative process privilege," the purpose of which "is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly, State of California v. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir.1992).

■■■ In order for a document to be protected by the deliberative process privilege, the document must be both "predecisional" and "deliberative." *Id.* "A 'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving at her decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Formaldehyde Inst. v. Department of Health and Human Services*, 889 F.2d 1118 (D.C.Cir.1989). A document is part of the deliberative process if disclosure of the document "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* Exemption 5 does not apply to factual information (unless release of the factual information would reflect or reveal the deliberative process), or to

recommendations or opinions ultimately relied upon in subsequent agency action. *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866–67 (D.C.Cir.1980). Retrospective evaluations of prior decisions must be segregated and released. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). The agency bears the burden of establishing "the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Strang v. Collyer*, 710 F.Supp. 9, 11 (D.D.C. 1989), *aff'd* 899 F.2d 1268 (D.C.Cir.1990).

Plaintiff takes issue with certain of defendants' *Vaughn* indexes, contending that they do not provide sufficient detail as to what each withheld documents *is* or as to what specific harm would befall the nation should that particular document be disclosed. The parties have conferred and isolated those indexes which plaintiff feels are insufficient and cover documents potentially responsive to its quest. After reviewing the disputed indexes, the Court has determined, for the reasons stated below, that although some of these indexes are sufficient, most, unfortunately, are not.

### A. Adequate Declarations

■■ The Department of Defense (Baker) declaration indexes 3 documents. With regard to the first two documents, the indexes are sufficient. In fact, they should serve as a model to the other declarants. They describe in great detail what the document is and how release of the withheld portions would adversely effect the nation. For example, Document 1 (L029) begins with a brief description of the document[1], notes that the document was withheld in part, and then discusses the portions withheld and the specific harms that would attend disclosure of those segments of the document.[2] Document 2 (L001) similarly explains what the withheld portions of the document are and

---

1. A "thirty-seven page study on an assessment of high-yield testing requirements dated December, 1981 ... [which] examines the technical and military needs for the United States to conduct high yield (greater than 150 kilotons) underground nuclear tests." Baker Decl. at 16.

2. For example, "[m]aterials withheld [from one section of the document] define the high-yield

U.S. underground nuclear test program before the March 31, 1976 effective date of the Threshold Test Ban Treaty and would provide potential adversaries with definitive information concerning test (and therefore system) yields which would allow increased confidence in estimates of the capabilities of the current U.S. nuclear weapon stockpile." *Id.*

the specific harm that would attend disclosure of that information.

██ The index for document 3, however, is deficient. The index describes in detail what the document is, and specifically points out harms that would attend disclosure of the document—for example, the document "criticizes advice to the President by others," disclosure of which would discourage candor and expose interagency tensions which could potentially be exploited by adversaries. Baker Decl. at 20. However, the document fails completely to discuss segregability and fails to disclose whether that opinion or advice was later relied upon by agency or Presidential action. Therefore, the index does not provide the Court with sufficient information to determine whether Exemption 5 was properly invoked and does not provide plaintiff with sufficient information to challenge the exemption.

The LaJoie Declaration concerns 1 document and is also sufficient, although it is not as complete as the Baker indexes.

### B. *Inadequate declarations*

██ The rest of the declarations are deficient, generally for failure to identify what specific harm will befall disclosure of a particular withheld document or for failure to discuss segregability.

#### 1. Sinisgalli declaration.

The Department of Energy indexes (Sinisgalli declaration) cover 3 documents and completely fail to particularize the harm claimed from disclosure of *those* documents and to discuss segregability. His declaration begins with a 6 page description of the *types* of information subject to exemption, and the *types* of harm that can result from disclosure of that information, and then gives a brief description of the 3 withheld documents in an attempt to establish that those documents contain a *type* of exempt information. This is precisely the approach rejected by the 9th Circuit in *Wiener*—categorical listing of harms and simply "linking" a document to a category.

#### 2. Smith declaration

The ACDA indexes (Smith declaration) cover approximately 62 documents. As with the DOE declaration, the Smith declaration lists types of excludable information and harms that generally attend disclosure of that information, and then gives a brief description of each document. The descriptions generally fail to state exactly what the document is (for example, Document L146 is described as "a 24 page undated memorandum classified Confidential"—memorandum from whom? to whom?). Worse, however, is the description of harm.[3] Smith employs exactly the approach rejected in *Wiener*. Furthermore, so little information is given that segregability is left to the pure speculation of the reader.

#### 3. Dyer declaration

The CIA indexes (Dyer declaration) concern 2 documents and are inadequate. Her index to document L243 provides a good description of what the document is, but then invokes a boilerplate explanation of the deliberative process exemption and cites the reader to a list of harms that may attend disclosure of deliberative process documents. That approach was categorically rejected by *Wiener*.

She also invokes Exemption (b)(1), simply stating that "because I have determined that the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security," it is exempt. She never explains what information in the memo could harm national security, or how, or whether it is segregable. With respect to Exemption 1, then, the index is also wholly deficient.

Her index for document X2631 is similarly conclusory, simply asserting that a document which consists of a one-page transmittal memorandum, a one-page CIA reference aid cover page, and two pages of "state department information" are non-responsive, non-segregable and exempt under exemption (b)(3). This description provides the Court

---

**3.** Document L146 is a classic example: "It is currently and properly classified under section 1.3(a)(5) for reasons set forth ... above. It is therefore withheld as exempt from disclosure under exemption (b)(1) of FOIA. For reasons set forth ... above, it is also withheld as exempt from disclosure under exemption (b)(5)." Smith Decl. at 15.

with no facts with which to evaluate her conclusions.

### 4. Jaeger declaration

This declaration concerns 1 document, and is so poorly drafted that it is difficult to determine what the document *is*. The declaration states in boilerplate fashion that "the character of the classified information in the document ... limits the degree to which specific description of withheld information can be provided," and then concludes that "the document contains information that discusses vulnerabilities or capabilities or systems, installations, projects, or plans relating to the national security." From this description, the reader has no idea *which* type of information the document contains. No specifics are given, only boilerplate language and a conclusion that the document is exempt under (b)(1). Without more, it is impossible for plaintiff to challenge this classification, and for the Court to evaluate that challenge.

### 5. Marchak declaration

This declaration covers approximately 63 documents. It appears that each of these documents have been withheld in full, a fact which raises questions of segregability. By and large, the indexes give sufficient descriptions of the documents withheld (the vast majority of these documents appear to be either reports of conversations between US officials and foreign officials made during negotiations, or briefing memoranda from one US official to another concerning these negotiations). Although they are much better than the ACDA and CIA declarations, they still suffer from fatal deficiencies.

Only 7 of the indexes are sufficient and need no further explanation. These are documents number 103, 117, 126, 254, 255, 490, and 625. These indexes give *detailed* descriptions of the documents in question, and *particularized* harm that would befall their release. Although somewhat sparse on segregability, they generally provide enough information from which the reader can reasonably determine whether segregation is possible.

Only 7 of the indexes were entirely insufficient. These are documents number 085, 194, 200, 207, 250, 529 and 539. Numbers 529 and 539 are unacceptable because they are literally identical. It appears that the writer literally *copied* 529 to 539. Number 085 gives only the briefest description of the document and then states simply that it "relates to CTB negotiations which the parties agreed to keep confidential." The reader has no idea what information the document contains. Number 194 is entirely conclusory, simply asserting that the document is properly classified and withheld. Number 200 adequately identifies the information contained in the document, but fails to explain the harm that will attend disclosure of that information and fails utterly on segregability. Number 207 is similarly conclusory on harms. For example, it asserts that the document "deals with sensitive issues and U.S. positions on a CTB, the release of which could harm U.S. foreign policy interests and damage national security." This is conclusory and insufficient—the government has released numerous "positions" on a CTB; the question to be answered by these indexes is why release of *this* position information would be harmful. Number 250 is so vague that the reader has no basis upon which to affirm or overrule the DOS's decision to withhold the document.

The remaining documents are generally deficient in two respects:

#### a. Deliberative Process

■ Marchak's discussions with regard to Exemption 5 are almost uniformly lacking. As noted above, in order for a document to be protected by the deliberative process privilege, the document must be both "predecisional" and "deliberative." Exemption 5 does not apply to factual information, or to recommendations or opinions ultimately relied upon in subsequent agency action. *Coastal States*, 617 F.2d at 866–67. Furthermore, retrospective evaluations of prior decisions must be segregated and released. *Vaughn*, 523 F.2d at 1144. The *agency* bears the burden of establishing "the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Strang*, 710 F.Supp. at 11.

However, Marchak rarely notes whether the recommendation or analysis contained in the document was ultimately relied upon in

subsequent agency action. It is usually unclear whether the analysis is "predecisional" at all—Marchak rarely provides the requisite factual background which would enable the reader to determine what "decision" the analysis assisted. He simply states that the document contains "analysis" or "recommendations," and then conclusorily states that the document is therefore "predecisional, deliberative" information exempt from disclosure. Without more information, this Court cannot conduct a *de novo* review of that conclusion as required by FOIA.

#### b. Segregability

All of Marchak's insufficient indexes fail to discuss segregability. Document 266 is a classic example. The index describes information contained in the document and particularizes the anticipated harm from release of the document. It then appends a boilerplate statement found at the end of *every single Marchak index,* which merely asserts that "no segregation of non-exempt, meaningful information can be made for disclosure." This is entirely insufficient.

This Court is required to make a *de novo* review of these agencies' conclusions that certain documents are exempt from disclosure. In order to make this *de novo* review, the Court requires *specific* facts which establish what these documents are and what information they contain. As part of that review, we are also required to make a *factual* determination of whether all non-exempt portions of these documents have been released. *Wiener,* 943 F.2d at 988. Therefore, the agencies are required to provide the Court with *facts* which will enable it to make that determination. This is particularly true with regard to Exemption 5, because it appears improbable that long documents are *entirely* "analytical," and do not contain any segregable *factual* material. The boilerplate, conclusory statement "[n]o segregation of non-exempt, meaningful information can be made for disclosure" at the end of each index provides no facts from which the Court can evaluate that assertion, and thus fails to provide the Court with the information necessary for it to make its decision. Boilerplate, conclusory statements such as this fail the essential purpose of a *Vaughn* index.

#### C. *Conclusion*

Although *some* of the submitted indexes are sufficient, the vast majority are not. As a matter of law, then, this Court must **DENY** defendants' motion for summary judgment. The Court remands the issue to the defendants for the production of factual, particularized *Vaughn* indexes consistent with this Opinion and upon which this Court could conduct a *de novo* review of the agencies' withholding decisions.

This case has been before the Court for over 3 years, and *Vaughn* indexes were not submitted until two years into this litigation. The Court will not tolerate a two year delay before the next set of indexes are submitted. The parties' have now identified the documents in dispute, and this Order explains why defendants' proffered indexes are insufficient. The Court can foresee no reason why revised indexes should not be submitted for this Court's consideration within 120 days of the date of this Order. It is expected that defendants will give the production of new *Vaughn* indexes sufficient priority to ensure that they are completed within that time. The defendants are forewarned that they will bear a substantial burden should they attempt to persuade the Court that more time is required.

Although a few of the proffered *Vaughn* indexes are sufficient, the Court finds that it would be a waste of time, and an unnecessary splitting of issues, to rule on the few sufficient declarations presently before the Court. Therefore, the Court withholds judgment on those documents until defendants have submitted sufficient indexes for *all* of the disputed documents.

### III. IN CAMERA REVIEW

Plaintiff urges the Court to conduct an *in camera* inspection of the withheld documents to test the validity of defendants' claims of exemption. The FOIA authorizes *in camera* review of withheld documents to determine whether the exceptions claimed were properly applied and whether all potentially segregable material has been disclosed. 5 U.S.C. § 552(a)(4)(B). Furthermore, the decision whether to appoint a special master to aid the Court in evaluating an agency's conten-

tion of exemption lies within the sound discretion of the trial court. *Vaughn,* 484 F.2d at 828.

However, *in camera* review of the withheld documents generally "is not an acceptable substitute for an adequate *Vaughn* index...." *Wiener,* 943 F.2d at 979. Generally, *"in camera* review may supplement an adequate *Vaughn* index, but may not replace it." *Id.* Defendants have not yet provided the Court with adequate *Vaughn* indexes. Therefore, at the present time *in camera* review of the disputed documents is not warranted.

Should defendants fail to submit adequate indexes after remand, the Court will not hesitate to exercise its discretionary power appoint a special master to assist the Court in an *in camera, de novo* review of defendants' withholdings. *See King,* 830 F.2d at 225 (when agency's affidavits insufficient, the District Court may, in its discretion, order submission of materials *in camera* or further affidavits). For now, however, plaintiffs request is **DENIED.**

**IT IS SO ORDERED.**