NATIONAL RESOURCES DEFENSE COUNCIL, Plaintiff,

v.

UNITED STATES DEPARTMENT OF DEFENSE, et al., Defendants.

No. CV04–2062GAF(RZX).

United States District Court,
C.D. California.

May 25, 2005.

Aaron Colangelo, Natural Resources Defense Council, Washington, DC, David S Beckman, Natural Resources Defense Council, Santa Monica, David C Vladeck, Institute for Public Representation, Kristi M. Smith, Institute for Public Representation–Georgetown University, Washington, DC, for Natural Resources Defense Council, Plaintiff.

Joel McElvain, U.S. Department of Justice, Civil Division Federal Programs Branch, Washington, DC, for United States Department of Defense, White House Office of Management and Budget, United States Environmental Protection Agency, Defendants.

## MEMORANDUM AND ORDER REGARDING DEPARTMENT OF DEFENSE'S AND ENVIRONMENTAL PROTECTION AGENCY'S MOTIONS FOR SUMMARY JUDGMENT

FEESS, District Judge.

## I.

## INTRODUCTION

The Freedom of Information Act (FOIA) obligates federal governmental agencies, upon request from any person, to disclose to that person all documents responsive to the request that are within the agency's possession, custody or control. An agency may refuse to disclose documents only when the requested materials fall within one of nine statutorily specified exemptions. The present motion involves a dispute between an organization that has made an FOIA request, and two agencies that have refused to produce several thousand documents that allegedly fall within one or more of these exemptions.

In 2003, Plaintiff National Resources Defense Council ("NRDC") submitted FOIA requests to the Department of Defense ("DoD") and the Environmental Protection Agency ("EPA") for documents regarding perchlorate, a chemical used in rocket fuel. Though the agencies failed to meet the statutorily mandated deadlines for production, both agencies ultimately produced documents to NRDC, but also withheld several thousand additional responsive documents that the agencies

claim fall within one of the statutorily mandated exemptions. DoD has withheld approximately 1,600 documents; EPA has withheld about 5,300 documents.

The agencies now move for summary judgment, which, in effect, asks the Court to approve the non-disclosure of these materials. To succeed on this motion, the agencies bear the burden of proving that: (1) they undertook an adequate search for the requested materials; (2) they produced all responsive documents; and (3) any documents that were withheld fall within the scope of one of the nine statutory exemptions. In support of their motions, DoD and EPA have each submitted declarations regarding the scope of their respective searches and an index of documents withheld. The declarations purport to explain why the searches were adequate, and why the documents identified in the indices were properly withheld under exceptions to the FOIA obligation to disclose documents upon request. The Court concludes that the motions, with one narrow exception explained below, should be **DENIED**.

DoD has failed to demonstrate an adequate search for responsive documents, and has failed to meet its burden of proving that the withheld materials are exempt from disclosure. The declarations submitted by DoD suggest that it conducted an improperly narrow search, and further fail to provide sufficiently detailed, nonconclusory statements, which together with the index, would allow the Court to assess whether the documents were properly withheld. With respect to EPA, the submitted declarations demonstrate that it made an adequate search. However, although its index presents much more detailed information than that presented by DoD, the declaration and index together nonetheless are too conclusory to meet its burden of establishing that the 5,300 documents have been properly withheld.

The Court therefore orders the agencies and NRDC to select, by agreement, a reasonably sized "representative sample" of documents grouped into categories, which will serve to represent all of the various classes or categories of documents withheld by each agency. The agencies will then describe the representative documents in a *Vaughn* index that contains sufficiently detailed descriptions and information to enable the Court to determine the applicability of the claimed exemption. The Court's eventual rulings concerning the withholding of the sample documents will apply to all of the disputed documents within a class or category represented by the samples. In addition, DoD shall also conduct a search of the Air Force, and prepare a *Vaughn* index of an agreed-upon representative sample of any withheld responsive documents discovered in that search.

## II.

### STATEMENT OF FACTS

#### A. NRDC's FOIA REQUESTS

##### 1. Requests to EPA

On March 24, 2003, NRDC submitted FOIA requests to EPA headquarters and duplicate requests to each of EPA's ten regional offices. (Pltf. Statement of Addt'l Material Facts ("PAF") ¶ 63). The requests sought records relating to perchlorate, a chemical used primarily in rocket fuel. (*Id.* ¶¶ 58, 65). The requests described government records concerning "risk assessment, potential standard setting or other risk management action, cleanup standards or decisions, information on risks, toxicity or occurrence, any potential National Academy of Sciences study, legislation or any other matter in which perchlorate is mentioned," "data or information on the toxicity or potential toxicity or health effects of perchlorate,"

and "data or information on the occurrence of perchlorate in ground water, surface water, drinking water, or on perchlorate disposal or known or potential releases of perchlorate into the environment." (*Id.* ¶ 65).

### 2. Requests to DoD

Plaintiff filed two FOIA requests with DoD on September 2, 2003. (*Id.* ¶ 68). The first request sought "communications regarding risk assessment for perchlorate, potential drinking water standards or cleanup standards for perchlorate, the toxicity of perchlorate, detections of perchlorate in water or soil, any potential National Academy of Sciences study of perchlorate, or any legislation regarding perchlorate." (Talbott Decl., Ex. A). The second request sought records "relating to efforts by the DoD to research public attitudes or opinions on perchlorate," the "toxicity or health or environmental effects of perchlorate," and records "summarizing the detection of perchlorate in groundwater, soil, or surface water at any DOD or contractor facilities." (PAF ¶ 72).

### B. THE EPA RESPONSE

#### 1. The Search

In response to NRDC's FOIA requests, EPA assigned Ambika Bathija, a toxicologist within its Office of Science and Technology, to be the lead contact for the requests. (Farland Decl. ¶ 4). Bathija identified the offices within EPA Headquarters and the regional offices that would be likely to have responsive documents. (*Id.* ¶ 5). The FOIA requests were forwarded to the FOIA coordinators in each of those offices, who in turn identified the programs and key staff in those offices who would be likely to have re-

sponsive documents. (*Id.* ¶ 6). EPA staff were directed to begin searching for responsive documents. (*Id.* ¶ 8).

EPA searched electronic files, personal computer hard drives, shared office computer drives, and paper file systems that were believed to contain responsive documents. (*Id.* ¶ 16). Documents that were recovered from these searches were forwarded to EPA headquarters for review. (*Id.* ¶ 19). After NRDC filed the complaint in this action, representatives of EPA Office of General Counsel contacted each of the offices that had been asked to search for responsive documents, and confirmed that each of those offices had forwarded to EPA Headquarters all documents concerning perchlorate that were responsive to NRDC's FOIA requests. (*Id.*). As a result of these searches, EPA identified approximately 20,000 responsive documents. (*Id.* ¶ 31).

#### 2. Documents Produced

EPA's response to NRDC's FOIA requests was due on April 8, 2003, but NRDC agreed to grant EPA an extension until May 22, 2003. (PAF ¶ 67). On May 21, 2003, EPA provided Plaintiff with one document while "again inform[ing] NRDC of the large number of potentially responsive documents." (*Id.*; Farland Decl. ¶ 11). No other documents were produced to Plaintiff until EPA filed the instant motion for summary judgment on November 11, 2004. (PAF ¶¶ 67, 84).[1] At that time, EPA released approximately 15,000 responsive documents. (*Id.* ¶ 84).

#### 3. Documents Withheld

EPA withheld from its production of responsive documents approximately 5,300

---

**1.** EPA purports to dispute this fact, but the cited testimony does not contradict Plaintiff's version of the events. (EPA Resp. to PAF ¶ 67) (citing McFarland Decl. ¶¶ 10–13). Rather, the cited declaration paragraphs state what EPA told NRDC it intended to do, but not what it in fact was able to accomplish.

documents pursuant to FOIA Exemptions 4, 5, 6 and 9.[2] (Farland Decl. ¶ 31). Plaintiff has withdrawn its opposition to EPA's withholdings under Exemptions 4 and 6. (Sur–Reply at 25). Thus, only those documents withheld under Exemption 5 and 9 remain at issue. To meet its burden of justifying the nondisclosure of withheld records, the EPA submits: (1) the declaration of Dr. William H. Farland, the Acting Deputy Assistant Administrator for Science in the EPA's Office of Research and Development; and (2) a *Vaughn* Index, which is attached to Farland's declaration.

### a. Farland's Declaration

To support the EPA's assertion of the deliberative process privilege, Farland describes a number of agency activities related to perchlorate from 1998 through 2003. In January 1998, EPA formed the Interagency Perchlorate Steering Committee ("IPSC") to work with other federal partners and stakeholders to identify issues and facilitate the transfer of information concerning perchlorate in a number of areas, including the occurrence of contamination in groundwater and surface waters, the potential for indirect exposures via uptake of perchlorate into vegetation or animals; and the development of analytical methods to detect presence of perchlorate in water and other media. (*Id.* ¶ 23). Then, in December 1998, EPA issued an external review draft ("ERD") document entitled "Perchlorate Environmental Contamination: Toxicological Review and Risk Characterization based on Emerging In-formation" ("1998 Draft Assessment"). (*Id.* ¶ 24). This document presented an updated human health risk assessment of perchlorate for external peer review. (*Id.*).

In June 1999, Norine Noonan, Assistant Administrator of EPA's Office of Research and Development (ORD), issued a memorandum entitled "Interim Assessment Guidance for Perchlorate" ("1999 Noonan Guidance"). (*Id.* ¶ 25). The 1999 Noonan Guidance provided interim guidance to EPA officials about how to use the latest perchlorate toxicity data in their risk management activities. (*Id.*). In 2002, EPA issued a revised ERD of the 1998 Draft Assessment ("2002 Draft Assessment") for external peer review. (*Id.* ¶ 26). In 2003, EPA issued a memorandum reaffirming the 1999 Noonan Guidance. (*Id.* ¶ 29).

As to the withheld documents, Farland declares that "unless otherwise noted on EPA's *Vaughn* Index, all of the documents EPA is withholding are protected from disclosure by Exemption 5." (*Id.* ¶ 35).[3] Farland generally describes the materials withheld under Exemption 5 as inter-agency or intra-agency documents "that are covered by the *deliberative process*, attorney client or attorney work-product privileges." (*Id.*) (emphasis added).[4] According to Farland, the withheld documents were created in connection with the activities described in the declaration, such as EPA's "development of the 1999 and 2002 draft assessments" and "development of the 1999 Noonan guidance." (*Id.* ¶ 36). In addition, Farland declares that some of

---

**2.** *See* 5 U.S.C. § 552(b)(4), (5), (6), (9).

**3.** A handful of maps withheld under Exemption 9 appear to be the only documents *not* withheld under Exemption 5. (*See, e.g.,* Farland Decl., Ex. B, Vol. 4 EPA 390–91). As explained more fully below, Exemption 5 allows withholding of inter-agency or intra-agency documents that are protected by the attorney-client privilege, attorney work-prod-uct privilege or the "deliberative process" privilege.

**4.** Plaintiff does not challenge EPA's withholdings under the attorney-client or attorney work product privileges. (Opp. at 24 n. 16, 28). Thus, the only withheld documents that remain at issue under Exemption 5 are those claimed to be protected by the deliberative process privilege.

the Exemption 5 documents are related to certain other perchlorate activities, not previously described in his declaration, such as "EPA's responses to inquiries from the press, public or Congress;" "testing of perchlorate at sites in the West and along the Colorado River;" and "EPA's responses to perchlorate contamination at federal and non-federal facilities." (*Id.*). Farland declares that the EPA's *Vaughn* Index identifies the connection between each withheld document and the EPA's predecisional activities. (*Id.* ¶ 36). Farland's declaration also describes sixteen "representative examples" of documents withheld under Exemptions 5, and explains why the EPA withheld these documents under the deliberative process privilege. (Farland Decl. ¶ 31, 32–60).[5]

### b. *Vaughn Index*

These sixteen documents and the balance of the 5,300 documents withheld under Exemption 5 are cataloged in a *Vaughn* index, attached as Exhibit B to Farland's declaration. EPA's *Vaughn* index comprises four bound volumes of approximately 500 pages each—and appears to describe all of the documents withheld under a claim of exemption. (Farland Decl. ¶ 31). The tabular index contains the following information about each withheld document: (1) document number; (2) number of pages; (3) date of document; (4) author/sender; (5) recipients; (6) courtesy copies; (7) a description of the document type and general subject; exemption claimed and brief explanation of how exemption applies to document; and whether the document has been released in whole or in part.[6]

## C. THE DoD RESPONSE

### 1. The Search

DoD confined its search for responsive documents to the Office of the Secretary of Defense ("OSD"), and did not search any other DoD component.[7] (Talbott Decl. ¶ 5). The Directorate forwarded Plaintiff's request to the OSD's Office of the Deputy Under Secretary of Defense for Installations and Environments ("I & E") because that office "is the subject matter expert in all environmental matters" within the OSD. (*Id.* ¶ 4). I & E "conducted searches of [its] files to identify responsive documents" and "engaged a contractor . . . to review the documents located and prepare them for a response to the plaintiff." (Kratz Decl. ¶ 4). In addition, DoD searched the files of the Deputy General Counsel (Environment & Installations) and certain attorneys on his staff. (Cohen

---

5. In addition to describing the withholdings under Exemption 5, Farland also declares that EPA has withheld maps that show the location of water wells under Exemption 9, "as identified on EPA's *Vaughn* Index." (*Id.* ¶ 58). Farland explains that "Exemption 9 protects geological and geophysical information and data, including maps, concerning wells." (*Id.*). Farland's declaration describes in detail one of the withheld maps. (*Id.* ¶ 59).

6. In the file-stamped copy of the index received by the Court, headings that describe the content of the table's columns appear on the first page of the fourth volume. Volume 1 contains documents numbered EPA3878 to EPA5330. Volume 2 contains EPA1333 to EPA2619. Volume 3 is a duplicate of Volume 2. Volume 4 contains EPA1 to EPA1332. The Court also received a courtesy copy of the EPA's index. In that copy, Volume 1 contains EPA1 to EPA1332. Volume 2 contains EPA2620 to EPA3877. Volume 3 is a duplicate of Volume 2. Volume 4 contains EPA3878 to EPA 5330. Thus, it appears that the portion of the index describing EPA2620 to EPA3877 may not have been properly filed with the Court. References to Volume numbers in this Order are to the file-stamped copy of the index.

7. DoD comprises numerous components including the various military agencies, such as the Army, Navy, and Air Force.

Decl. ¶ 3). Finally, DoD made "electronic searches of the records of several other [unspecified] Defense Department officials who have been responsible for [perchlorate] matters." (Aly 2d Decl. ¶ 4).

In 2000, three years before NRDC's FOIA request, DoD designated the Department of the Air Force as lead DoD component for perchlorate-related matters, "including the coordination of the efforts of *all the DoD components.*" (Kratz Decl. ¶ 3 & Ex. A) (emphasis added). However, in response to Plaintiff's request, as noted above, DoD confined its search to OSD, and did not conduct a search of any other components, including the lead component for perchlorate-related matters. (DoD SUF ¶¶ 13, 14). There is no indication in the record that the Air Force's special role was made public prior to this litigation.

## 2. Documents Produced

With the exception of documents already available to the public on DoD's website, DoD has forwarded to NRDC copies of non-exempt responsive documents found in its search of I & E's and the Deputy General Counsel's records. (Kratz Decl ¶ 5; Cohen Decl. ¶ 4). No responsive records were discovered in the files of the "other DoD officials." (Aly 2d Decl. ¶ 4). No evidence has been submitted regarding the quantity of produced documents, but Plaintiff asserts that DoD has released "a few hundred documents." (Opp. at 8).

## 3. Documents Withheld

DoD withheld from its production of responsive documents approximately 1,600 documents pursuant to Exemption 5. (Aly 3d Decl., Ex. A). To meet its burden of justifying non-disclosure, DoD submits: (1) the declaration of Benedict S. Cohen, Deputy Counsel (Environment and Installations) in the Office of the General Counsel of the Department of Defense, and (2) a *Vaughn* index attached to the Third Declaration of Stewart F. Aly.

### a. Cohen Declaration

In his declaration, Cohen describes the deliberative process privilege in general terms. (Cohen Decl. ¶ 6). Cohen declares that "all of the documents listed on the attached index[8] are exempt under this privilege" and "[t]hey fall into 'three general categories.'" (*Id.*). Cohen describes each of these categories, citing to the attached index of thirty-five document for specific examples from each category. (Cohen Decl. ¶ 6(A)-(C)). For example, Cohen describes the second category as:

(B) Drafts of *various types* of documents, including responses to Congressional inquiries, presentations to be made by Defense Department officials or contractors to officials of the Department of Defense or other agencies, presentations intended for public meetings, and memoranda providing *various types of information* for internal consideration in the deliberative process. Document number 25 on the attached index is an

---

8. Cohen does not refer to DoD's *Vaughn* index, but to a subset index of thirty-five documents attached to his own declaration. At oral argument, DoD's counsel clarified that Cohen's declaration and the attached index concerns only the documents withheld from *Cohen's* office, the Office of the General Counsel. Cohen does not declare that he had any personal knowledge of the other withheld documents. Thus, the generalized justifica-

tions for withholding documents under Exemption 5, which are set forth in Cohen's declaration, are only applied to the other 1,600 withheld documents by means of Aly's third declaration, which incorporates Cohen's declaration by reference. (*See* Aly 3d Decl. ¶ 4) ("Documents listed on the attached index ... are exempt from release for the reasons stated in the declarations of Kurt L. Kratz and Benedict S. Cohen previously filed.").

example of drafts of a briefing prepared by officials of the Defense Department to outline developments in California and then present options for future Defense Department actions.

(*Id.* ¶ 6(B)) (emphasis added).

### b. Vaughn Index

DoD's *Vaughn* index is in a tabular format with three columns labeled "Document Identification," "Date" and "Description of Document," respectively. A fourth column is unlabeled, but certain entries contain the notations, "release" or "not responsive." The index contains entries for 1,647 documents. At the bottom of each page, the DoD index states "[a]ll documents listed on this index are exempt from release under the deliberative process privilege, FOIA exemption 5 except where noted that the documents are non-responsive or being released." Thus, for example, the entry for document number 194 is entitled "FW Testimony," dated 1/17/2003, and is described as "[f]orward of current version of the perchlorate testimony," and notes that "[a]ttached is the testimony with comments." (Aly 3d Decl., Ex. A).

### III.

### DISCUSSION

### A. SUMMARY JUDGMENT IN FOIA CASES

■ "Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Mace v. EEOC,* 37 F.Supp.2d 1144, 1146 (E.D.Miss.1999).

"Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits." *Lion Raisins, Inc. v. USDA,* 354 F.3d 1072, 1082 (9th Cir.2004).[9]

FOIA opens government records to private citizens. *See Minier v. CIA,* 88 F.3d 796, 800 (9th Cir.1996). The statute "mandates a policy of broad disclosure of government documents." *Church of Scientology v. Dep't of the Army,* 611 F.2d 738, 741 (9th Cir.1979). An agency may withhold a requested document "only if the material at issue falls within one of the nine statutory exemptions found in [5 U.S.C.] § 552(b)." *Maricopa Audubon Soc'y v. United States Forest Serv.,* 108 F.3d 1082, 1085 (9th Cir.1997).

Where a citizen has made a request for information under FOIA, and the agency has refused in whole or in part to produce responsive materials, the act authorizes the citizen to bring suit in federal court challenging the agency's refusal to disclose documents to the requester. 5 U.S.C. § 552(a)(4)(B). These lawsuits typically present a dispute over the agency's claim that the withheld documents fall within one of the statutorily authorized exemptions. These exemptions are "explicitly exclusive, and must be narrowly construed in light of *FOIA's dominant objective of disclosure, not secrecy.*" *Maricopa,* 108 F.3d at 1085 (internal citations and quotation marks omitted) (emphasis added).

---

**9.** The well-known standard for summary judgment, however, is not germane to a FOIA proceeding. "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier,* 88 F.3d at 800; *see also Fiduccia v. United States DOJ,* 185 F.3d 1035, 1040 (9th Cir.1999) ("Though this is review of a summary judgment, our review in a FOIA summary judgment case is not simply de novo, nor do we ask whether there is a genu-

ine issue of fact in most cases. Instead, in a FOIA case, we first determine whether the district judge had an adequate factual basis for decision, and if not, remand."); *see, e.g., Heeney v. FDA,* 1999 U.S. Dist. LEXIS 23365 (C.D.Cal., Mar. 11, 1999) ("[T]he real question before the court on these cross-motions for summary judgment is the adequacy of the *Vaughn* indices prepared by the FDA and Boston Scientific, and whether they support withholding information under one of the FOIA exemptions.").

The peculiar nature of a FOIA dispute poses unique problems. As the Ninth Circuit has observed:

> In a typical FOIA case, the plaintiff must argue that a government agency has improperly withheld requested documents, even though *only the agency knows* their actual content. This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversarial process. To address this problem, courts have created methods to be sure the requesting party and the deciding judge have sufficient information upon which to determine whether the government agency properly withheld the requested documents. These methods include creation of a *"Vaughn* index" ... and the submission of some other form of accounting for the withheld documents, such as an affidavit.

*Schiffer,* 78 F.3d at 1408–09 (internal citations, quotation marks and brackets omitted) (emphasis added).

The burden is on the agency to show that withheld materials are exempt from disclosure. U.S.C. § 552(a)(4)(B); *see also Minier,* 88 F.3d at 800. In addition, the governmental agency has the burden of proving that it has "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983); *see also Zemansky v. United States EPA,* 767 F.2d 569, 571 (9th Cir.1985). In order to prevail on summary judgment, the agency must prove "it has fully discharged [these burdens] under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. United States Dep't of State,* 779 F.2d 1378, 1382 (8th Cir.1985) (citing *Weisberg,* 705 F.2d at 1350); *see also Zemansky,* 767 F.2d at 571.

### 1. Government's Burden as to Adequacy of Search

To meet its burden on summary judgment in a FOIA case, the agency must first demonstrate the adequacy of its search for responsive records. *Weisberg,* 745 F.2d at 1485. The agency must:

> demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." ... [T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Zemansky,* 767 F.2d at 571 (quoting *Weisberg,* 745 F.2d at 1485 (citations omitted) (emphasis in original)).

### 2. Government's Burden as to Claimed Exemptions

As to the applicability of exemptions, the agency may meet its burden by "submitting a detailed affidavit showing that the [withheld] information 'logically falls within the claimed exemptions'" (*Minier,* 88 F.3d at 800) or a "'*Vaughn* index'"—or both. *Wiener v. FBI,* 943 F.2d 972, 977 (9th Cir.1991); *Schiffer,* 78 F.3d at 1408–09. The government's submission must be "detailed enough for the district court to make a de novo assessment of the government's claim of exemption." *Maricopa,* 108 F.3d at 1092.

### a. Specificity

■ Because the government's submissions provide the only source of information regarding the withheld documents, an

agency is required to support its claim of exemption with *specificity*. "Unless the agency discloses as much information as possible without thwarting the claimed exemption's purpose, the adversarial process is unnecessarily compromised." *Wiener*, 943 F.2d at 979 (internal citation and quotation marks omitted). To support a claim of exemption, a *Vaughn* index must (1) identify each document withheld, (2) identify the statutory exemption claimed, and (3) provide "a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Id.* at 977. " 'Specificity is the defining requirement of the *Vaughn* index.' " *Id.* at 979 (quoting *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C.Cir.1987)). " '[B]oilerplate explanations,' " which fail to "tailor the explanation to the specific document withheld" lack the required specificity and are therefore insufficient. *Id.* at 978; *see also Miller v. U.S. Dept. of Agric.*, 13 F.3d 260, 263 (8th Cir.1993).

Similarly, government affidavits or declarations must "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987). Whether by *Vaughn* index or by affidavit or some combination of the two, the government must "provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and why, and the court can decide whether the exemptions claimed justify the nondisclosure." *Fiduccia*, 185 F.3d at 1043.

### b. Segregability

▉ Furthermore, under FOIA, "even if part of a document is FOIA exempt, the agency still must disclose any portions which are not exempt." *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F.Supp. 1291, 1296

(N.D.Cal.1992); *see* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). Thus, "an agency must perform a 'segregability analysis,' " distinguishing exempt from nonexempt material within each document. *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F.Supp.2d 252, 257 (D.D.C.2004). In the Ninth Circuit, the district court must review the agency's "segregability" decisions on a document-by-document basis.

> It is reversible error for the district court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof," with respect to that document. The court ... must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable.

*Wiener*, 943 F.2d at 988 (citation omitted); *see also Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 744 (9th Cir.1979). "Given the procedures on summary judgment in FOIA cases and the limited information available to the district court, this court, like the plaintiff, must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings." *Hronek v. DEA*, 16 F.Supp.2d 1260, 1269 (D.Or.1998).

In evaluating the sufficiency of the agency's submissions with regard to segregability, the Court is instructed by the D.C. Circuit's teaching in the seminal case of *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 261 (D.C.Cir.1977) that "unless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they

may be challenged by FOIA plaintiffs and reviewed by the courts." *Id.* at 261.

In addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. Armed with such a description, both litigants and judges will be better positioned to test the validity of the agency's claim that the non-exempt material is not segregable. For example, if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted. On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information.

*Id.*

**B. EXEMPTION FIVE**

Because the government's submission "must correlate facts in or about each withheld document with the elements of the [claimed exemption]," the sufficiency of the information presented in a *Vaughn* index or declaration depends, in large part, upon the nature of the exemption asserted. *Judicial Watch,* 297 F.Supp.2d at 260. Therefore, it is appropriate first to review the elements of what is by far the most significant claimed exemption at issue before turning to examine the sufficiency of the government's submissions in this case.

Defendants together claim over six thousand withheld documents are protected from disclosure pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5"). Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As construed, Exemption 5 entitles an agency to withhold from the public inter-agency or intra-agency records that are otherwise protected by the attorney-client privilege, the attorney work-product privilege, or the *"deliberative process"* privilege. *See Maricopa,* 108 F.3d at 1092 (emphasis added). "In light of the strong policy of the FOIA that the public is entitled to know what its government is doing and why, exemption 5 is to be applied as narrowly as consistent with efficient Government operation." *Id.* at 1093 (internal quotation marks omitted).

**1. Deliberative Process Privilege**

In general terms, the deliberative process privilege "protects from disclosure any documents that reveal an agency's deliberative process in reaching policy decisions." *Judicial Watch,* 297 F.Supp.2d at 258. The purpose of the privilege "is to prevent injury to the quality of agency decisions by ensuring that the frank discussion of legal or policy matters in writing, within the agency, is not inhibited by public disclosure." *Maricopa,* 108 F.3d at 1092. To qualify for protection under the deliberative process privilege, a document must be both: (1) "predecisional" and (2) "deliberative." *Nat'l Wildlife Fed'n v. United States Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir.1988). The Ninth Circuit has adopted the D.C. Circuit's definition of these terms.

A 'predecisional' document is one 'prepared in order to assist an agency deci-

sionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.' A predecisional document is a part of the 'deliberative process,' if 'the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'

*Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.1992) (quoting *Formaldehyde Inst. v. Dep't of Health and Human Services*, 889 F.2d 1118 (D.C.Cir.1989) (internal citations omitted) (alteration in original)); *see also Carter v. United States DOC*, 307 F.3d 1084, 1089 (9th Cir.2002).

■ In order to establish that a document is predecisional, the agency "must identify the role of a contested document in a specific deliberative process." *Judicial Watch*, 297 F.Supp.2d at 259 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980)). The Ninth Circuit has held that "the agency must identify a specific decision to which the document is predecisional." *Maricopa v. U.S.*, 108 F.3d 1089, 1094 (9th Cir. 1997);[10] *see also Bay Area Lawyers*, 818 F.Supp. at 1297; *compare Access Reports*

*v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C.Cir.1991) (finding that an agency need not identify "a single, discrete decision," since not all processes result in final agency decisions, but must at least identify a specific decisionmaking process).

■ "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D.Cal.1998) (citing *Coastal States*, 617 F.2d at 866); *see also Bay Area Lawyers*, 818 F.Supp. at 1297. Finally, factual material is generally not exempt under the deliberative process privilege unless its release would "reflect or reveal the deliberative process." *Bay Area Lawyers*, 818 F.Supp. at 1297. "Whereas 'materials reflecting deliberative or policy-making processes' fall within exemption 5, 'memoranda consisting *only* of compiled factual material or *purely* factual material contained in deliberative memoranda and severable from its context would generally be available' for inspection by the public." *National Wildlife*, 861 F.2d at 1118 (quoting *Environmental Protection Agency v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (emphasis in original)). However, factual materials are "exempt from disclosure to the extent that they reveal the mental processes of decisionmakers." *Id.* at 1119.

---

**10.** Defendants suggest that the statement in *Maricopa* is dictum, and contrary to the "holding" of the Supreme Court in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n. 18, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). (*See* Reply at 21–22). Defendants get it exactly wrong. The footnote in *NLRB*, upon which Defendants rely, is clearly dictum while the statement in *Maricopa* is explicitly a holding. *Maricopa*, 108 F.3d at 1094 ("Thus, we are required to reject the government's primary

argument that a continuing process of agency self-examination is enough to render a document "predecisional" and *hold*, instead, that the agency must identify a specific decision to which the document is predecisional.") (emphasis added). Moreover, the Ninth Circuit specifically considered the *"cautionary dictum"* contained in *NLRB's* footnote 18 before reaching its *holding* in *Maricopa. Id.* (emphasis added).

## 2. Attorney–Client Privilege

■ Six of the over 1,600 documents withheld by DoD under the deliberative process privilege are also asserted to be protected by the attorney-client privilege. (*See* Defs. Combined Supplement Statement ("SSUF") ¶ 141 (citing Cohen Decl. ¶¶ 5, 7 & Ex. A, items 1, 2, 7, 13, 27, 32)).[11] A recent decision of a D.C. district court succinctly summarizes the burden on an agency that claims attorney-client privilege pursuant to Exemption 5.

The attorney-client privilege exists to protect a client's confidences to her attorney so that the client may have "uninhibited confidence" in the inviolability of her relationship with her attorney. *Coastal States,* 617 F.2d at 862. The privilege also protects communications by the attorney to her client regarding the same issues. *Id.* To invoke the privilege, an agency must demonstrate that the document it seeks to withhold (1) involves "confidential communications between an attorney and his client" and (2) relates to "a legal matter for which the client has sought professional advice." *Mead Data Cent.,* 566 F.2d at 252; *see also Animal Legal Def. Fund,* 44 F.Supp.2d at 302. The privilege does not allow an agency to withhold a document merely because it is a communication between the agency and its lawyers. *Coastal States,* 617 F.2d at 862–63. The agency bears the burden of showing that the information exchanged was confidential. *Mead Data Cent.,* 566 F.2d at 253. That is, the agency must show that it supplied information to its lawyers "with the expectation of secrecy and was not known by or disclosed to any third party." See *id.* at 254.

*Judicial Watch,* 297 F.Supp.2d at 267.

## C. DoD Fails to Meet its Burden on Summary Judgment

Plaintiff contends that DoD has failed to carry its burden on summary judgment with respect to both the adequacy of its search and its justification for non-disclosure of records under the claimed exemption. The Court agrees.

### 1. DoD Has Failed to Establish that Its Search Was Adequate

■ Both of Plaintiff's FOIA requests to DoD were addressed to the Directorate for Freedom of Information and Security Review ("Directorate"), which, among other things, is "responsible for responding to requests for records of the Office of the Secretary of Defense." (DoD FOIA Handbook[12] at 1; Talbott Decl., Ex. A); *see also* 32 C.F.R. § 286 App. B, ¶ 2.1.1. Plaintiff does not challenge the adequacy of the DoD's search of the Office of the Secretary of Defense ("OSD"). However, three years before NRDC's FOIA request, DoD designated the Department of the Air Force as the **lead component** for perchlorate-related matters, "including the coordination of the efforts of *all the DoD components.*" (Kratz Decl. ¶ 3 & Ex. A) (emphasis added). Plaintiff asserts, and DoD does not dispute that "[a]t the time NRDC made its request, DOD *had not made public* its decision to designate the Department of the Air Force as its lead component for perchlorate, and, as far as [Plaintiff] know[s], did not do so until this litigation was well underway." (Sur–Reply at 4). Despite the special role played by the Air Force, the Directorate did not direct Plaintiff, or forward Plaintiff's FOIA requests to the Air Force. (DOD SUF ¶¶ 13, 14).[13]

---

**11.** EPA also asserts withholdings under the attorney client privilege and the work-product privilege. However, Plaintiff does not challenge these withholdings. (Opp. at 24 n. 16, 28).

**12.** DoD FOIA Handbook, Directorate for Freedom of Information and Security Review,

available at http://www.dod.gob/ pubs/foi/foi-pam3. pdf.

**13.** Plaintiff initially disputed that the Directorate did not forward its request to the Air Force, citing to two letters from the Air Force, Headquarters 89th Airlift Wing, which referenced Plaintiff's FOIA request. (Colan-

Plaintiff challenges the reasonableness and adequacy of DoD's search on the grounds that, under these factual circumstances, the agency was required by its own regulations and relevant case law to search the Air Force, but failed to do so. (Opp. at 11). DoD responds that, in accordance with its regulations, it reasonably interpreted Plaintiff's request "to be *directed* to [responsive] documents within the control of the Office of the Secretary of Defense ("OSD")," and not to documents within the control of any other components of DoD, including the Air Force. (Mot. at 10). "The adequacy of the search ... is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Zemansky,* 767 F.2d at 571 (internal quotation marks omitted).

### a. Regulations Governing DoD's FOIA Program

The DoD FOIA program is regulated under 32 C.F.R. §§ 285–286. The regulations provide:

> The Department of Defense does not have a central repository for DoD records. *FOIA requests,* therefore, **should** be addressed to the *DoD Component* that has custody of the record desired. In answering *inquiries* regarding FOIA requests, DoD personnel **shall** *assist* requesters in determining the *correct DoD Component* to address their requests. If there is *uncertainty* as to the ownership of the record desired, the requester *shall be referred* to the *DoD Component* that is *most likely* to have the record.

32 C.F.R. § 286 App. B, ¶ 2.1.2 (emphasis added). Requests for records from the OSD are to be addressed to the Directorate. *Id.;* ¶ 2.2.1. Records from the Department of the Air Force may be request-

ed from the commander of any Air Force installation or "if there is uncertainty as to which Air Force activity may have the records," requests may be sent to the Pentagon. *Id.,* ¶ 2.2.4. Finally, "if there is *uncertainty* as to *which DoD Component* may have the DoD record sought, the requester may address a Freedom of Information request to the Directorate." *Id.* ¶ 2.5 (emphasis added).

In addition, "[a] request received by a DoD Component *having no records responsive* to a request shall be referred routinely to *another DoD Component,* if the other DoD Component has *reason to believe it has the requested record.*" 32 C.F.R. § 286.44($l$)(1) (emphasis added).

### b. DoD's Limitation of the Search to OSD Was Unreasonable under the DoD FOIA Regulations and Relevant Case Law

Here, it is undisputed that DoD knew that the Air Force, as the lead DoD component for perchlorate activities, would possess *substantial* numbers of records responsive to Plaintiff's request. (DoD SUF ¶ 14). Moreover, there appears to be no dispute that the Air Force's special role was *not public knowledge* at the time of Plaintiff's request. However, to justify the limitation of its search to OSD, DoD relies on a regulation, which contains the precatory admonition that FOIA requesters "should" direct their inquiries to the agency component where the records are believed to be located. (Mot. at 9) (citing 32 C.F.R. § 286 App. B, ¶ 2.1.2). DoD concludes that because Plaintiff directed its requests to the Directorate, which is responsible for responding to request for records of the OSD, DoD was only required to search OSD under 32 C.F.R. § 286 App. B ¶ 2.1.2 [14] and ¶ 2.2.1.[15] DoD

---

gelo ¶ 14 & Exs. 1, 2). However, the letters at issue arose out of the request to EPA, not DoD. EPA identified documents in its possession that were originated by the 89th Airlift Wing, and referred them to the Air Force for processing. (SSUF ¶ 116–119).

**14.** Paragraph 2.1.2 provides that "FOIA requests ... should be addressed to the DoD

also relies on the referral provision of the DoD FOIA regulations, which provides that "[a] request received by a DoD Component *having no records responsive* to a request shall be referred routinely to another DoD Component, if the other DoD Component has reason to believe it has the requested record." 32 C.F.R. § 286.44(*l*)(1) (emphasis added).

DoD argues that under this provision it had no obligation to refer Plaintiff's request to the Air Force because the OSD *had* over 5,000 responsive documents—and the referral requirement applies to DoD Components with "*no* records responsive." (Reply at 6). Plaintiff responds that under "DOD's strained reading," the Directorate could avoid making a referral to the Air Force as long as OSD had *one* responsive record in its possession. (Sur–Reply at 6). More importantly, however, DoD's justification for limiting its search to OSD relies too heavily on the *precatory* language in ¶ 2.1.2, which is directed to FOIA requesters, and ignores the *mandatory* command to the agency that

> In answering inquiries regarding FOIA requests, DoD personnel *shall assist* requesters in determining the *correct DoD Component* to address their requests. If there is *uncertainty* as to the ownership of the record desired, the requester *shall be referred* to the *DoD Component* that is *most likely* to have the record.

32 C.F.R. § 286 App. B, ¶ 2.1.2 (emphasis added). DoD's argument also overlooks the significance of the Directorate's special responsibility for responding to vague or uncertain requests. *Id.* ¶ 2.5. ("If there is uncertainty as to which DoD Component may have the DoD record sought, the requester may address a Freedom of Information request to the Directorate for Freedom of Information and Security Review."). Finally, as explained below, DoD's interpretation and application of FOIA regulations under the particular factual circumstances of this case is contrary to the rule enunciated in *Kowalczyk v. Department of Justice,* 73 F.3d 386, 387 (D.C.Cir.1996).

Here, DoD was presented with two FOIA requests, concerning a broad range of records concerning perchlorate. (Taylor Decl., Ex. A). The requests were addressed to the Directorate, but did *not* make a specific request for OSD documents. (*Id.*). In fact, neither request made mention of *any* particular DoD component. Rather, the letters contained the following vaguely worded statement:

> Our assumption is that these documents will be located on site at DOD offices in Washington D.C., and not in DOD field offices. If you think that field offices will have additional responsive documents, please search the files of the field offices as well.

(*Id.*).

Rather than construing NRDC's letters to the Directorate for perchlorate records as requests under 32 C.F.R. § 286 App. B, ¶ 2.5,[16] DoD chose to construe NRDC's letters as specific requests for *OSD records* pursuant to 32 C.F.R. § 286 App. B, ¶ 2.2.1 [17] despite the following facts: (1) NRDC sought a broad range of documents

---

Component that has custody of the record desired." 32 C.F.R. § 286 App. B ¶ 2.1.2.

**15.** Paragraph 2.2.1 provides that specific requests for records from the OSD and the Joint Staff are to be sent to the Directorate. 32 C.F.R. § 286 App. B ¶ 2.1.1.

**16.** "If there is *uncertainty* as to which DoD Component may have the DoD record sought, the requester may address a Freedom of In-

formation request to the *Directorate* for Freedom of Information and Security Review." 32 C.F.R. § 286 App. B, ¶ 2.5 (emphasis added).

**17.** "Office of the Secretary of Defense and the Chairman of the Joint Chiefs of Staff. Send all requests for records from the below listed offices to [the Directorate.]." 32 C.F.R. § 286 App. B, ¶ 2.2.1.

related to perchlorate; (2) NRDC's letter made no specific request for OSD records nor mentioned OSD or any other specific DoD component; (3) NRDC's requests contained a vague and uncertain reference to "DoD offices in Washington D.C." and "DoD field offices;" (4) the Air Force was the DoD's lead component for perchlorate; and (5) NRDC could not have known of the Air Force's role. In light of these facts, the mandatory command to assist and refer requesters contained in ¶ 2.1.2, and the Directorate's special responsibility under ¶ 2.5, the Court finds that it was unreasonable, if not disingenuous, for DoD to construe NRDC's requests as limited to OSD. The referral provision of 32 C.F.R. § 286.44(i)(1), upon which DoD relies, does not render DoD's conduct in this case reasonable as that provision must be read in conjunction with the other above-referenced regulations commanding DoD to assist requesters in cases of uncertainty, and giving the Directorate special responsibility to assist and respond to uncertain requests.

The Court's determination is further supported by the rule laid out the D.C. Circuit in *Kowalczyk*. To guide agencies in fulfilling their duty to "conduct a search reasonably calculated to uncover all relevant documents," the court described two scenarios, and prescribed the appropriate response. *Kowalczyk*, 73 F.3d at 389. In the first, the court stated that where an agency could "reasonably interpret the request to be for records in a specific office or offices only," then "upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them." *Id.* Here, however, even if DoD could "reasonably interpret" NRDC's requests as directed at OSD, it could not "reasonably infer that the requester already [had the Air Force] records," or was

"seeking them through a separate request" because DoD *knew* that Plaintiff *did not know* that Air Force had a special role in perchlorate-related activities. *Id.* In light of the broad scope of Plaintiff's request, it is inconceivable that DoD could reasonably infer that "for whatever reason, [Plaintiff did] not want [the Air Force records]." *Id.*

In the second scenario, the court taught that where "the requester clearly states that he wants all agency records on a subject, i.e., regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." *Id.* Here, Plaintiff stated that it wanted all DoD records on a subject, "but fail[ed] to direct the agency's attention to any particular office other than the one receiving the request," thus DoD was obligated to pursue only those leads it could not "in good faith ignore, i.e., a lead that [was] both clear and certain" (*id.*)—in this case, the knowledge that Air Force coordinated "the efforts of all the DoD components" regarding perchlorate. (Kratz Decl. ¶ 3 & Ex. A). As the D.C. Circuit teaches, DoD "may [not] ignore what it cannot help but know." *Id.*

Had the Air Force's special role been public knowledge at the time of NRDC's requests or had DoD informed NRDC of the Air Force's role and directed NRDC to make a separate request, the Court's determination of the adequacy of DoD's search would likely be different. Here, however, the facts indicate that DoD acted unreasonably, and its search was inadequate. "Congress did not intend for the [DoD], or any other agency, to use the FOIA offensively to hinder the release of non-exempt documents." *Long v. United States IRS*, 693 F.2d 907, 910 (9th Cir. 1982). The Court therefore **DENIES**

summary judgment as to the adequacy of the search, and **ORDERS** DoD to conduct a search of the Department of the Air Force for responsive records.

### 2. DoD Has Failed to Establish that Its Withholdings are Justified

DoD's declarations and *Vaughn* index fail to provide information sufficient to enable the Court to assess whether whole documents or portions of documents were properly withheld.

### a. DoD's Index is Insufficiently Detailed To Allow the Court to Determine Whether the Claimed Exemptions Apply

An agency's *Vaughn* Index "must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply to the withheld documents." *Wilderness Soc'y v. United States DOI*, 344 F.Supp.2d 1, 9 (D.D.C.2004). Here, DoD has failed to carry its burden with regard to its withholdings under the deliberative process privilege and attorney-client privilege pursuant to Exemption 5.

DoD contends that it has "submitted declarations that discuss the exemptions that they have claimed," and its index contains "unique descriptions of each document that has been withheld" which "reveal[ ] that the document falls under the claimed exemption." (Reply at 14). DoD thereupon concludes that it has fulfilled its burden by "providing sufficient information for the Court to evaluate their exemption claims." (*Id.*). In other words, DoD contends it has given the Court all the pieces of the puzzle, and now the Court is obliged to fit the more than 1,600 pieces of the puzzle together. DoD seeks to "shift[ ] a sizable portion of the agency's ... burden onto the shoulders of the court." *King*, 830 F.2d at 221. "Such an investment of judicial energy might be justified to determine some issues. In this area of

the law, however, ... it is [not] justified or even permissible. The burden has been placed specifically by statute on the Government." *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C.Cir.1973).

### i. Deliberative Process Privilege

 Many, if not most, of DoD's document descriptions on its *Vaughn* index are inadequate to support a claim of deliberative process privilege because it is unclear if the documents are predecisional. Neither the descriptions nor Cohen's declaration "identify a specific decision to which [the withheld] document is predecisional" (*Maricopa*, 108 F.3d 1089, 1094) or "identify a decisionmaking process to which a [withheld] document contributed." *Judicial Watch*, 297 F.Supp.2d at 259 (citing *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C.Cir.1991)). Cohen's declaration speaks about "actions under consideration by the Defense Department" and "responses to Congressional inquiries," (Cohen Decl. ¶ 6), but such vague and generalized descriptions fail to meet the agency's "burden of identifying the decisionmaking process to which [each of the withheld documents] contributed." *Access Reports*, 926 F.2d at 1196; *compare Wilderness Soc'y*, 344 F.Supp.2d at 12.

Descriptions of withheld records in DoD's *Vaughn* index, such as "[d]iscussion on the comment by EPA on a perchlorate document being prepared by DoD" (Aly 3d Decl., Ex. A, Doc. No. 996), are strikingly similar to descriptions rejected as inadequate by the court in *Judicial Watch* for failing to "pinpoint particular decisionmaking processes or policies these documents contributed to." 297 F.Supp.2d at 266. DoD "rarely provides the requisite factual background which would enable to reader to determine what 'decision' the analysis assisted." *Bay Area Lawyers*, 818 F.Supp. at 1300.[18] "It is not enough to say

18. *See, e.g.,* Aly 3d Decl., Ex. A at Doc. No. 1171 ("Sampling data—working file"); *id.,*

that the documents relate, in some way, to [actions taken or proposed in response to perchlorate], for if they did not, the documents would not be before the court at all. [DOD] must identify particular decision-making processes, or else the court cannot recognize the documents as 'predecisional.'" *Judicial Watch*, 297 F.Supp.2d at 264.

Finally, DoD fails to indicate whether these documents lost their predecisional status by being adopted as final policies or by being shared with the public. *See Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C.Cir.1982). Because DoD fails to provide the names or organizational affiliations of the document's author, recipient, or copyees on its *Vaughn* list, it is entirely speculative whether any of these "predecisional" documents were disclosed to third parties.[19]

### ii. Attorney–Client Privilege

█ DoD identifies six documents withheld under a claim of attorney-client privilege in addition to the deliberative process claim. (*See* SSUF ¶ 141 (citing Cohen Decl. ¶¶ 5, 7 & Ex. A, items 1, 2, 7, 13, 27, 32)). DoD's justifications for these

Doc. No. 696 ("draft letter to EPA with markups"); *id.*, Doc. No. 701 ("Draft markup of NPL sites where perchlorate remediation action have taken place"); *id.*, Doc. No. 637 ("Draft overview of perchlorate science and health affects"); *id.*, Doc. No 261 ("E-mail discussing perchlorate sampling at certain DoD site via RCRA"); and *id.*, Doc. No. 123 ("Forward of the latest draft version of DoD testimony. Attached is the draft testimony"). The Court notes that documents "do not qualify as deliberative simply by labeling them as drafts." *Wilderness Soc'y*, 344 F.Supp.2d at 14. As to the draft testimony, DoD has not demonstrated, "one way or the other, that the [withheld draft testimony] was 'antecedent' to [DoD] policy. If the testimony simply justified or explained [existing DoD policy] to Congress, the materials are not antecedent and therefore are not protected." *Judicial Watch*, 297 F.Supp.2d at 263.

withholdings are insufficient. "[DoD] does little more than identify these documents as attorney-client communications without establishing that they involve the provision of legal advice. [DoD] fails to show that these documents involved the provision of specifically *legal* advice or that they were intended to be confidential," and were kept confidential.[20] *Judicial Watch*, 297 F.Supp.2d at 267 (citing *Mead Data Cent.*, 566 F.2d at 261).

"These documents might well contain legal advice and confidential information, but [DoD] does not say so." *Judicial Watch*, 297 F.Supp.2d at 267. While Cohen declares: "[d]ocuments withheld as privileged attorney-client communications contain legal analysis *or* opinions provided by an attorney of the Defense Department *either* to another attorney *or* to a client," (Cohen Decl. ¶ 7) (emphasis added), the "court is not allowed to grant summary judgment based on such conclusory statements." *Judicial Watch*, 297 F.Supp.2d at 268. Moreover, Cohen's declaration is precisely the type of equivocal boilerplate explanation that the court in *Wiener* rejected as clearly inadequate. *Compare* 943 F.2d at 976.

19. Of the 1,647 documents on DOD's *Vaughn* index, only 18 list both author and recipient. (Colangelo 2d Decl. ¶ 7(a)). Another 34 descriptions indicate either the author or recipient, but not both. (*Id.*). The remaining documents list neither author nor recipient. (*Id.*).

20. *See, e.g.* Cohen Decl. Ex. A, Doc. No. 1 ("Action memorandum recommending signature of letter, hand written notes by attorney on letter draft. Attorney client privilege applies to this document"); *id.*, Doc. No. 13 ("Request for advice from counsel on proposed revisions to response to inquiries from Congress. Attorney-client privilege."); *id.*, Doc. No. 27 ("Unsigned draft not on letterhead with handwritten corrections of counsel").

### b. DoD Does not Provide the Required Segregability Analysis

The Court may not " 'approve the withholding of an entire document without entering a finding on segregability.' " *Wiener*, 943 F.2d at 988 (quoting *Church of Scientology*, 611 F.2d at 744). Here, DoD asserts it "has identified in its indices those documents for which it has released reasonably segregable, non-exempt portions." (Reply at 13–14).[21] However, merely identifying those documents that have been only partially released falls far short of providing a factual basis for a "specific finding that no information contained in *each document or substantial portion of a document withheld* is segregable." *Wiener*, 943 F.2d at 988 (emphasis added). Moreover, Cohen's conclusory declaration that "none of the withheld documents contain reasonably segregable information that is not exempt" fails to carry DoD's burden. (Cohen Decl. ¶ 8); *see Bay Area Lawyers*, 818 F.Supp. at 1300.

To meet its burden DoD must provide a "statement of its reasons" for not segregating and "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent.*, 566 F.2d at 261. Here, "so little information is given that segregability is left to the pure speculation of the reader." *Bay Area Lawyers*, 818 F.Supp. at 1298.[22]

### c. Conclusion

The *Vaughn* Index submitted by DoD in this case resembles the index rejected as inadequate in *Coastal States*, 617 F.2d at 861. In this case, however, the index provides *even less* information. Cohen's generalized descriptions of "categories" of withheld information do not cure the index's defects, especially where there is no indication Cohen had any personal knowledge of the withheld 1,600 documents outside of the thirty-five documents withheld from his own office. *See King*, 830 F.2d at 224 ("Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."). Moreover, even in those instances where the index would enable the Court to determine what "decisionmaking process" the document assisted, the index completely fails to analyze segregability or disclose whether the document was later relied upon by the agency or exposed to the public. Because of these deficiencies, the Court **DENIES** summary judgment to DoD.

### D. EPA FAILS TO MEET ITS BURDEN ON SUMMARY JUDGMENT

EPA has failed to carry its burden on summary judgment with respect to its justification for non-disclosure of records under the claimed exemptions—with one narrow exception as explained below.[23]

---

21. While it is no doubt true that DoD has explicitly identified on its index some documents that have been released in part, the agency does not bother to point the Court to any examples. In contrast to EPA's index, DoD's index does not indicate—on a document-by-document basis—whether the document has been partially or completely withheld.

22. In regard to segregability, Plaintiff raises a specific objection that DOD has failed to "jus-

tify withholding segregable factual material" for certain documents withheld under a claim of deliberative process privilege. (Opp. at 22). The same objection is raised as to EPA's submission. These objections are discussed together below.

23. Plaintiff does not challenge the adequacy of EPA's search for responsive documents. The Court finds that EPA's search, as described above, was reasonable and adequate.

### 1. EPA's Index is Insufficiently Detailed To Allow the Court to Determine Whether the Claimed Deliberative Process Privilege under Exemption 5 Applies

 Although EPA's index generally provides much more detail and support for its withholdings than DoD, it too is ultimately insufficient to allow a grant of summary judgment. Some of EPA's descriptions clearly link the documents to a specific decisionmaking processes—for example, how to address contamination at Aberdeen (Farland Decl. Ex. B, Vol. 4, EPA700); how to respond to a citizen group's letter (*id.*, EPA529); what regulatory approach to take toward cleanup of perchlorate contamination; (*id.*, Vol. 2, EPA2128). Other descriptions, however, fail to identify decision-making processes to which the documents contributed—for example, "deliberative discussion" of "perchlorate in lettuce study" (*id.*, Vol. 2, EPA1678); "internal fact sheet" related to "perchlorate in fertilizer" (*id.*, Vol. 2, EPA1796); "discussion re perchlorate contamination in fertilizer for an internal briefing" (*id.*, Vol. 3, EPA1932). In these instances, the Court cannot determine the propriety of the claimed deliberative process privilege without a clearer identification of the relevant decisionmaking process. "[T]he affidavits fail to carry the Government's burden of proof here because at no place do they define, explain, or limit the 'deliberative process' which the Government seeks to protect." *Vaughn*, 523 F.2d at 1146.

While it is true that Farland's declaration describes "a series of issues that were the subject of the agency's decision-making, and particular decisions that the agency has been required to make regarding perchlorate," this catalog of decisions or decisionmaking processes does not meet EPA's burden as to *particular* documents. (SSUF ¶ 134). EPA must "connect the dots" between each withheld document and a decision-making process or specific decision. Finally, EPA does not indicate whether the withheld documents have lost their predecisional status by being shared with the public or by being "adopted, formally or informally, as the agency position on an issue." *Arthur Andersen*, 679 F.2d at 258 (internal quotation mark omitted).

### 2. EPA Does not Provide the Required Segregability Analysis

#### a. Conclusory Statements are Not Sufficient

 Although "EPA's index explicitly states whether each document has been withheld in whole or in part" (Reply at 13), this information by itself provides no basis for the specific finding on segregability required in this Circuit. *Wiener*, 943 F.2d at 988. Nor does the boilerplate statement appended to each document description on the agency's *Vaughn* index, which conclusorily asserts "[a]ll reasonably segregable information has been released" suffice to meet EPA's burden of providing a "segregability analysis" for each withheld document or "substantial portion of a document withheld." *Id.; see also Wilderness Soc'y*, 344 F.Supp.2d at 19.

#### b. Segregable Factual Material Must be Released

Factual material that does not reveal the decision maker's mental processes is not protected by the deliberative process privilege and must be segregated and released. *Bay Area Lawyers*, 818 F.Supp. at 1297. As noted above, Plaintiff objects that both EPA and DoD have to failed to "justify withholding segregable *factual* material" contained in certain documents withheld in whole under the deliberative process privilege. (Opp. at 22). Relying on the declarations of Aly and Farland, Defendants respond that they "have provided sufficient information to the Court to reveal

that they have withheld these factual materials because disclosure of particular facts under discussion would interfere with the deliberative process." (Reply at 15) (citing SSUF ¶ 126).

To the extent Defendants argue that draft compilations of factual data may be properly withheld because they may have been "subject to revision" (Farland Decl ¶ 60) and release may somehow embarrass or discourage the "submitters of the data" (Aly 4th Decl. ¶ 9), these arguments are unpersuasive. Similar arguments were rejected by the D.C. Circuit in *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429 (D.C.Cir.1992). In that case, as here, the government "does not convincingly explain why its concerns . . . could not be allayed by conspicuously warning FOIA requesters that the [draft document] is . . . unofficial and that the [agency] disclaims responsibility for any errors or gaps." *Id.* at 1437. The court also noted that "[t]he release of materials that do not embody agency judgments— for example, materials relating to standard or routine *computations or measurements* over which the agency has no significant discretion—is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions." *Id.* at 1436 (emphasis added). Thus, to the extent Defendants are withholding "draft" data compilations because they may have been "subject to revision," such withholding appears to be improper. It is clear that "simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." *Wilderness Soc'y*, 344 F.Supp.2d at 14; *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257–258 (D.C.Cir.1982).

As to the other examples of improperly withheld factual materials cited by Plaintiff such as the "briefing materials" and "chronology," Defendants' explanations fall far short of showing that "the unveiling of [the contested] factual materials would be tantamount to the 'publication of the *evaluation* and *analysis* of the multitudinous facts' conducted by the agency." *National Wildlife*, 861 F.2d at 1119 (quoting *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68 (D.C.Cir.1974)) (emphasis added). Without more information, the Court cannot determine whether the agencies' decision not to segregate and release the contested factual information in these and similar instances was appropriate. However, the Court observes that "briefing materials" are *not* per se exempt. *See National Sec. Archive v. FBI*, 759 F.Supp. 872, 882 (D.D.C.1991). Moreover, the D.C. Circuit has found that agencies must disclose purely factual chronologies. *Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C.Cir.1993).

### 3. EPA Has Properly Withheld Maps of Water Wells Under Exemption 9

■ Plaintiff also contends EPA has improperly withheld maps that show the locations of publicly-owned water wells under Exemption 9. (Opp. at 33). Exemption 9 permits the withholding of "geological or geophysical information and data, including maps, concerning wells." 5 U.S.C. § 552(b)(9). Plaintiff concedes that "literally read, Exemption 9 can be said to cover information relating to publicly-owned water wells." (Opp. at 33). Nonetheless, Plaintiff asserts these withholdings represent a "gross misuse" of Exemption 9, contrary to the "intent of the drafters." (*Id.*). For support, Plaintiff relies on *Black Hills Alliance v. United States Forest Service*, 603 F.Supp. 117, 122 (D.S.D. 1984), which, according to Plaintiff, "interpreted Exemption 9 to apply only to information concerning *privately-held* oil and gas wells." (Opp. at 34) (emphasis added). Plaintiff, however, misreads *Black Hills*, which makes no distinction between *public* and *private* wells on government land.

Rather, the court in *Black Hills* concluded that the "exemption applies only to well information of a technical or scientific nature" and "was intended to be limited in scope to scientific or exploratory findings concerning well drillings." 603 F.Supp. at 122.

Plaintiff also relies on the legislative history of Exemption 9, which it contends— despite the provision's plain language— "demonstrates that it was enacted to protect information concerning privately-held oil and gas wells, and nothing more." (Sur–Reply at 24) (citing H.R.Rep. No. 89–1497, 11 (1966)). However, as Defendants point out, the report gives no indication that Congress intended the statutory language to be read as applying only to maps of *private* wells on public property, but not *public* wells on public land. (Reply at 28).

> This category was added after witnesses testified that geological maps based on explorations by private oil companies were not covered by "trade secrets" provisions of present laws. Details of oil and gas findings must be filed with Federal agencies by companies which want to lease *Government-owned* land. Current regulations of the Bureau of Land Management prohibit disclosure of these details only if the disclosure "would be prejudicial to the Government" (43 CFR, pt. 2). Witnesses contended that disclosure of seismic reports and other exploratory findings of oil companies would give speculators an unfair advantage over the companies which spent millions of dollars in exploration.

H.R.Rep. No. 89–1497, 11 (1966) (quoted in *Black Hills*, 603 F.Supp. at 122) (emphasis added).

On the basis of its interpretation of this equivocal legislative history, Plaintiff urges the Court to construe the language of Exemption 9 as limited to "privately-held" wells to avoid an interpretation of statutory language that would give it a "distorted meaning." (Sur–Reply at 24) (quoting *Schwarder v. United States*, 974 F.2d 1118, 1131 (9th Cir.1992)) (Alarcon J. dissenting). However, as the Ninth Circuit has explained, "it is well-settled that 'reference to legislative history is inappropriate when the text of the statute is unambiguous.'" *United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th Cir.2004).

Here, the plain, unambiguous language of the provision, as Plaintiff concedes, does not limit the Exemption to privately-owned wells. The Court "therefore decline[s] [Plaintiff's] invitation to troll [Exemption 9's] legislative history in search of statements that might—or might not—contradict the plain language of the provision." *Sioux*, 362 F.3d at 1246–47. Exemption 9 clearly allows for the withholding of maps concerning wells. Accordingly, the Court **GRANTS** EPA's motion only as to the maps withheld under Exemption 9.

### E. REPRESENTATIVE SAMPLING

Given the large number of documents involved in this case, representative sampling is the "appropriate procedure to test [the] agenc[ies'] FOIA exemption claims." *Bonner v. United States Dep't of State*, 928 F.2d 1148, 1151 (D.C.Cir.1991). To create a representative sample, "the authority charged with preparing the sample scrutinizes an entire document pool, and includes in the sample items which in its judgment are typical of broader classes of documents within the pool." *In re United States Dep't of Defense*, 848 F.2d 232, 237 (D.C.Cir.1988). "[A]ny decision as to those [sample] documents is applicable to all of the [represented] documents at issue." *Davin v. United States DOJ*, 60 F.3d 1043, 1053 (3d Cir.1995). Thus, representative sampling "allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually

through a *Vaughn* index." *Bonner*, 928 F.2d at 1151.

The Court hereby **ORDERS** the parties to select an agreed-upon reasonably sized representative sample of the withheld documents, which contain sample documents typical of the "broader classes of documents within the pool." *In re United States DOD*, 848 F.2d at 237. After the representative samples have been agreed upon, DoD and EPA shall prepare and submit detailed *Vaughn* indices and declarations justifying the withholding of the sample documents.[24]

It is said that *Mead Data Central* provides the best general advice on how much and what kind of detail the *Vaughn* Index should contain. General advice aside, the revised *Vaughn* index must be sufficiently detailed such that the court and [Plaintiff] can conduct their own reviews of the applicability of the privileges to specific documents. The revised index should provide details on each document ... such that the court could, on its own, match these details to each element of every privilege that applies to a particular document. Furthermore, the revised index must also provide information on any other potentially dispositive issues identified by the court (e.g., waiver of privilege because documents were adopted as final policy or because they were released to third parties).

Finally, for each and every document, the revised *Vaughn* Index must include a segregability analysis for every document withheld in full, identifying the proportion of privileged and non-privileged information, and must explain specifically why the documents can not be redacted and produced. Documents containing privileged information that [the agencies] can reasonably segregate must be disclosed and redacted.

*Judicial Watch*, 297 F.Supp.2d at 270–71.

Producing a properly detailed *Vaughn* index is a "considerable burden." *Id.* However,

Those burdens may be avoided at the option of the agency ... by immediate disclosure. Congress has encouraged the agencies to disclosure [sic] exempt material *for which there is no compelling reason for withholding,* and an agency's own balancing of the resource costs of justifying nondisclosure against the value of secrecy may provide a rough estimate of how compelling is its reason for withholding.

*Id.* (quoting *Mead Data Cent.*, 566 F.2d at 261) (emphasis added). The Court's eventual ruling regarding the propriety of withholding any particular sample document or group of sample documents will, of course, apply to all other withheld documents represented by that document or group of sample documents.

## IV.

## CONCLUSION

For the reasons explained above, the Court **DENIES** DoD's motion for summary judgment and **ORDERS** DoD to conduct a search of the Department of the Air Force for records responsive to Plaintiff's request. The Court further **ORDERS** DoD to prepare *Vaughn* indices based on representative samples of documents withheld from each of the searches. The representative sample shall be selected by the agreement of NRDC and DoD.

---

**24.** DoD shall prepare a first *Vaughn* index based on an agreed-upon representative sample of its OSD withholdings. After the search of the Air Force is complete, DoD shall pre- pare a second *Vaughn* index based on an agreed-upon representative sample of withheld Air Force documents.

The Court **GRANTS** EPA's motion only as to the maps withheld under Exemption 9; the remainder of EPA's motion is **DENIED**. The Court further **ORDERS** the parties to agree upon a representative sample of withheld documents. EPA shall prepare a revised *Vaughn* index of the representative sample.

IT IS SO ORDERED.